KRAFT GENERAL FOODS, INC. *v.* IOWA DEPART-
MENT OF REVENUE AND FINANCE

No. 90–1918.  Argued April 22, 1992—Decided June 18, 1992

STEVENS, J., delivered the opinion of the Court, in which WHITE, O'CON-NOR, SCALIA, KENNEDY, SOUTER, and THOMAS, JJ., joined. REHNQUIST, C. J., filed a dissenting opinion, in which BLACKMUN, J., joined, *post*, p. 82.

*Jerome B. Libin* argued the cause for petitioner. With him on the briefs were *Kathryn L. Moore* and *John V. Donnelly.*

*Marcia Mason,* Assistant Attorney General of Iowa, argued the cause for respondent. With her on the brief were *Bonnie J. Campbell,* Attorney General, and *Harry M. Griger,* Special Assistant Attorney General.

*Kent L. Jones* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General Starr, Acting Assistant Attorney General Bruton, Deputy Solicitor General Wallace, Gary R. Allen,* and *Ernest J. Brown.*\*

JUSTICE STEVENS delivered the opinion of the Court.

In 1981 petitioner Kraft General Foods, Inc. (Kraft), operated a unitary business throughout the United States and in several foreign countries. Because part of its business was conducted in Iowa, Kraft was subject to the Iowa Business Tax on Corporations.[1] At issue in this case is Iowa's inclusion in the tax base of the dividends that Kraft received from six subsidiaries, each of which was incorporated and conducted its business in a foreign country.[2] While Iowa taxes

---

\*Briefs of *amici curiae* urging reversal were filed for Avon Products, Inc., et al. by *Timothy B. Dyk, Edward K. Bilich,* and *Maryann B. Gall;* for Chevron Corp. et al. by *Mark L. Evans, Alan I. Horowitz,* and *Anthony F. Shelley;* and for the Washington Legal Foundation by *Stephan G. Weil, Susan G. Braden, Daniel J. Popeo,* and *Paul D. Kamenar.*

*Richard Ruda, Michael G. Dzialo, Martin Lobel,* and *James F. Flug* filed a brief for the National Conference of State Legislatures et al. as *amici curiae* urging affirmance.

[1] Iowa Code § 422.32 *et seq.* (1981).

[2] See App. to Pet. for Cert. 29a. Kraft owned capital stock representing more than 80% of the voting power and of the total value of the subsidiaries. *Ibid.*

the dividends that a corporation receives from its foreign subsidiaries, Iowa does not tax dividends received from domestic subsidiaries. The question presented is whether the disparate treatment of dividends from foreign and from domestic subsidiaries violates the Foreign Commerce Clause.[3]

I

The Iowa statute uses the federal definition of "net income" with certain adjustments.[4] For federal tax purposes, corporations are generally allowed a deduction for dividends received from domestic subsidiaries.[5] As the earnings of the domestic subsidiaries, themselves, are subject to federal taxation, this deduction avoids a second federal tax on those earnings.[6] The Federal Government generally does not tax the earnings of foreign subsidiaries, and the dividends paid by foreign subsidiaries are not deductible. The parent corporation, however, does receive a credit for the foreign taxes paid on the dividends and on the underlying foreign earnings.[7] Like the deduction for domestic subsidiary dividends, the foreign tax credit is intended to mitigate multiple taxation of corporate earnings.[8]

---

[3] "The Congress shall have Power . . . To regulate Commerce with foreign Nations . . . ." U. S. Const., Art. I, §8.

[4] See Iowa Code §422.35 (1981).

[5] See 26 U. S. C. §243.

[6] See 465 N. W. 2d 664, 665 (Iowa 1991); B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders ¶ 5.05 (5th ed. 1987).

[7] See 26 U. S. C. §§901, 902. Instead of taking the credit, the corporation may elect to deduct the foreign tax withheld on dividends from foreign subsidiaries. See §164. The taxpayer may not take both the credit and the deduction. See §275(a)(4). The credit is almost always more valuable to the taxpayer. See 3 B. Bittker & L. Lokken, Federal Taxation of Income, Estates and Gifts ¶ 69.14 (2d ed. 1991).

[8] See *United States* v. *Goodyear Tire & Rubber Co.*, 493 U. S. 132, 139 (1989); *American Chicle Co.* v. *United States*, 316 U. S. 450, 452 (1942); see also Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders ¶ 17.11.

In following the federal scheme for the calculation of taxable income, Iowa allows a deduction for dividends received from domestic subsidiaries, but not for those received from foreign subsidiaries. Iowa does not directly tax the *income* of a subsidiary unless the subsidiary, itself, does business in Iowa.[9] Thus, if a domestic subsidiary transacts business in Iowa, its *income* is taxed, but if it does not do business in Iowa, neither its income nor the dividends paid to its parent are taxed. In the case of the foreign subsidiary doing business abroad, Iowa does not tax the corporate income, but does tax the dividends paid to the parent.[10] Unlike the Federal Government, Iowa does not allow a credit for taxes paid to foreign countries. See 465 N. W. 2d 664, 665 (Iowa 1991).[11]

In computing its taxable income on its 1981 Iowa return, Kraft deducted foreign subsidiary dividends, notwithstanding contrary provisions of Iowa law.[12] Respondent Iowa Department of Revenue and Finance (Iowa) assessed a defi-

---

[9] Iowa is not a State that taxes an apportioned share of the entire income of a unitary business, without regard for formal corporate lines. See Tr. of Oral Arg. 37; cf. *Container Corp. of America* v. *Franchise Tax Bd.*, 463 U. S. 159, 164–169 (1983).

[10] At oral argument, counsel for Kraft offered the following illustration: "If an Iowa parent company had a Kentucky subsidiary, [that] did all its business in Kentucky, and another subsidiary that did all its business in Germany, Iowa would not tax the income of either of those subsidiaries. If each paid a dividend to the Iowa parent, Iowa would tax the German dividends and would not tax the Kentucky dividends." Tr. of Oral Arg. 47–48.

[11] If in calculating its federal tax liability, a taxpayer elects to deduct foreign tax withheld on foreign subsidiary dividends, a taxpayer may also deduct these tax payments in calculating its Iowa taxes. Electing the deduction, then, allows the taxpayer to reduce, but not eliminate, the Iowa tax on foreign subsidiary dividends. In the relevant year, Kraft elected to take the foreign tax credit, see 465 N. W. 2d, at 666, and thus could not deduct the foreign taxes in computing its federal or Iowa taxable income, see n. 7, *supra*.

[12] See 465 N. W. 2d, at 666.

ciency. After its administrative protest was denied,[13] Kraft challenged the assessment in Iowa courts, alleging that the disparate treatment of domestic and foreign subsidiary dividends violated the Commerce Clause and the Equal Protection Clause[14] of the Federal Constitution. The Iowa Supreme Court rejected the Commerce Clause claim because petitioner failed to demonstrate "that Iowa businesses receive a commercial advantage over foreign commerce due to Iowa's taxing scheme." *Id.*, at 668. In considering Kraft's challenge under the Equal Protection Clause, the court found that Iowa's use of the federal formula for calculation of taxable income was convenient both for the taxpayer and for the State. Concluding that the Iowa statute was rationally related to the goal of administrative efficiency, the Iowa Supreme Court held that the statute did not violate equal protection. *Id.*, at 669. We granted certiorari. 502 U. S. 1056 (1992).

## II

The principal dispute between the parties concerns whether, on its face, the Iowa statute discriminates against foreign commerce. It is indisputable that the Iowa statute treats dividends received from foreign subsidiaries less favorably than dividends received from domestic subsidiaries. Iowa includes the former, but not the latter, in the calculation of taxable income. While admitting that the two kinds of dividends are treated differently, Iowa and its *amici* advance several arguments in support of the proposition that this differential treatment does not constitute prohibited discrimination against foreign commerce.

*Amicus* United States notes that a subsidiary's place of incorporation does not necessarily correspond to the locus of its business operations. A domestic corporation might do

---

[13] See App. to Pet. for Cert. 26a.

[14] "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U. S. Const., Amdt. 14, § 1.

business abroad, and its dividends might reflect earnings from its foreign activity. Conversely, a foreign corporation might do business in the United States, with its dividend payments reflecting domestic business operations. On this basis, the United States contends that the disparate treatment of dividends from foreign and domestic subsidiaries does not translate into discrimination based on the location or nature of business activity and is thus not prohibited by the Commerce Clause.

We recognize that the domicile of a corporation does not necessarily establish that it is engaged in either foreign or domestic commerce. In this case, however, it is stipulated that the foreign subsidiaries did, in fact, operate in foreign commerce and, further, that the decision to do business abroad through foreign subsidiaries is typically supported by legitimate business reasons.[15] By its nature, a unitary business is characterized by a flow of value among its components. See *Container Corp. of America* v. *Franchise Tax Bd.*, 463 U. S. 159, 178 (1983). The flow of value between Kraft and its foreign subsidiaries clearly constitutes foreign commerce; this flow includes the foreign subsidiary dividends, which, as Iowa acknowledges, themselves constitute foreign commerce.[16]

Moreover, through the interplay of the federal and Iowa tax statutes, the applicability of the Iowa tax necessarily depends not only on the domicile of the subsidiary, but also on the location of the subsidiary's business activities. The

---

[15] The parties stipulated as follows:

"Domestic Corporations typically do business in foreign countries through corporations organized in the country in which they are doing business for a variety of reasons. Reasons include, but are not limited to, the requirements of the local country, a better ability to limit their liability in that country, the marketing advantage of being perceived by customers as a local company, greater ease in repatriating funds, greater ease in borrowing funds locally, and ability to own property and manufacture in that country." App. to Pet. for Cert. 30a–31a.

[16] See Tr. of Oral Arg. 24, 35.

Federal Government generally taxes the income that a foreign corporation earns in the United States.[17]   To avoid multiple taxation, the Government allows a deduction for foreign subsidiary dividends that reflect such domestic earnings.[18] In adopting the federal pattern, Iowa also allows a deduction for dividends received from a foreign subsidiary if the dividends reflect business activity in the United States.   Accordingly, while the dividends of all domestic subsidiaries are excluded from the Iowa tax base, the dividends of foreign subsidiaries are excluded only to the extent they reflect domestic earnings.[19]   In sum, the only subsidiary dividend payments taxed by Iowa are those reflecting the foreign business activity of foreign subsidiaries.   We do not think that this discriminatory treatment can be justified on the ground that some of the (untaxed) dividend payments from domestic subsidiaries also reflect foreign earnings.

In a related argument, Iowa and *amicus* United States assert that Kraft could conduct its foreign business through domestic subsidiaries instead of foreign subsidiaries or, alternatively, could set up a domestic company to hold the stock of the foreign subsidiaries and receive the foreign dividend payments.   In either case, Kraft, itself, would receive no dividends from foreign subsidiaries and would thus avoid paying Iowa tax on income attributable to the foreign operations.   Iowa and the United States contend that these alternatives further demonstrate that it is not foreign commerce,

---

[17] See 26 U. S. C. § 882.

[18] See § 245.

[19] The dissent presents the example of a subsidiary incorporated in a foreign country, but engaged in business exclusively in the United States. The dissent doubts whether a dividend payment from such a subsidiary is properly characterized as "foreign commerce." *Post*, at 85.   As discussed above, however, a dividend payment from such a subsidiary would *not* be taxed by Iowa.   Iowa taxes foreign subsidiary dividends only to the extent that they reflect *foreign* earnings.   The dissent does not dispute that this kind of dividend payment does constitute "foreign commerce." *Post*, at 84.

but, at most, a particular form of corporate organization that is burdened.

This argument is not persuasive. Whether or not the suggested methods of tax avoidance would be practical as a business matter, and whether or not they might generate adverse tax consequences in other jurisdictions, we do not think that a State can force a taxpayer to conduct its foreign business through a domestic subsidiary in order to avoid discriminatory taxation of foreign commerce. Cf. *Metropolitan Life Ins. Co.* v. *Ward*, 470 U. S. 869, 878–879 (1985). We have previously found that the Commerce Clause is not violated when the differential tax treatment of two categories of companies "results solely from differences between the nature of their businesses, not from the location of their activities." *Amerada Hess Corp.* v. *Director, Div. of Taxation, N. J. Dept. of Treasury*, 490 U. S. 66, 78 (1989).[20] We find no authority for the different proposition advanced here that a tax that does discriminate against foreign commerce may be upheld if a taxpayer could avoid that discrimination by changing the domicile of the corporations through which it conducts its business. Our cases suggest the contrary. See *Westinghouse Electric Corp.* v. *Tully*, 466 U. S. 388, 406 (1984); *Halliburton Oil Well Cementing Co.* v. *Reily*, 373 U. S. 64, 72 (1963).

Repeating the argument that prevailed in the Iowa Supreme Court, Iowa next insists that its tax system does not violate the Commerce Clause because it does not favor local interests. To the extent corporations do business in Iowa, an apportioned share of their entire corporate income is subject to Iowa tax. In the case of a foreign subsidiary doing business abroad, Iowa would tax the dividends paid to the domestic parent, but would not tax the subsidiary's earnings.

---

[20] In *Amerada Hess*, we rejected the contention that a New Jersey tax violated the Commerce Clause because it "discriminate[d] against oil producers who market their oil in favor of independent retailers who do not produce oil." 490 U. S., at 78.

Summarizing this analysis, Iowa asserts: "More earnings of the domestic subsidiary, which has income producing activities in Iowa, than earnings of the foreign subsidiary, which has no Iowa activities, are included in the preapportioned net income base for the unitary business as a whole." Brief for Respondent 19. Far from favoring local commerce, Iowa argues, the tax system places additional burdens on Iowa businesses.

We agree that the statute does not treat Iowa subsidiaries more favorably than subsidiaries located elsewhere. We are not persuaded, however, that such favoritism is an essential element of a violation of the Foreign Commerce Clause. In *Japan Line, Ltd.* v. *County of Los Angeles*, 441 U. S. 434 (1979), we concluded that the constitutional prohibition against state taxation of foreign commerce is broader than the protection afforded to interstate commerce, *id.*, at 445–446, in part because matters of concern to the entire Nation are implicated, *id.*, at 448–451. Like the Import-Export Clause,[21] the Foreign Commerce Clause recognizes that discriminatory treatment of foreign commerce may create problems, such as the potential for international retaliation, that concern the Nation as a whole. *Id.*, at 450. So here, we think that a State's preference for domestic commerce over foreign commerce is inconsistent with the Commerce Clause even if the State's own economy is not a direct beneficiary of the discrimination. As the absence of local benefit does not eliminate the international implications of the discrimination, it cannot exempt such discrimination from Commerce Clause prohibitions.

Iowa and *amicus* United States also assert the stronger claim that Iowa's tax system does not favor business activity in the United States generally over business activity abroad. If true, this would indeed suggest that the statute does not

[21] "No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws . . . ." U. S. Const., Art. I, § 10, cl. 2.

discriminate against foreign commerce. We are not convinced, however, that this description adequately characterizes the relevant features of the Iowa statute. It is true that if a subsidiary were located in another State, its earnings would be subject to taxation by the Federal Government and by the other State (assuming that the State was one of the great majority that impose a corporate income tax).[22] This state and federal tax burden might exceed the sum of the foreign tax that a foreign subsidiary would pay and the tax that Iowa collects on dividends received from a foreign subsidiary. But whatever the tax burdens imposed by the Federal Government or by other States, the fact remains that *Iowa* imposes a burden on foreign subsidiaries that it does not impose on domestic subsidiaries.[23] We have no reason to doubt the assertion of the United States that "[i]n evaluating the alleged facial discrimination effected by the Iowa tax, it is not proper to ignore the operation of other

---

[22] Corporate income is taxed by 45 States and by the District of Columbia. See 1 J. Hellerstein, State Taxation: Corporate Income and Franchise Taxes ¶ 1.6 (1983).

[23] If one were to compare the aggregate tax imposed by Iowa on a unitary business which included a subsidiary doing business throughout the United States (including Iowa) with the aggregate tax imposed by Iowa on a unitary business which included a foreign subsidiary doing business abroad, it would be difficult to say that Iowa discriminates against the business with the foreign subsidiary. Iowa would tax an apportioned share of the domestic subsidiary's entire earnings, but would tax only the amount of the foreign subsidiary's earnings paid as a dividend to the parent.

In considering claims of discriminatory taxation under the Commerce Clause, however, it is necessary to compare the taxpayers who are "most similarly situated." *Halliburton Oil Well Cementing Co.* v. *Reily,* 373 U. S. 64, 71 (1963). A corporation with a subsidiary doing business in Iowa is not situated similarly to a corporation with a subsidiary doing business abroad. In the former case, the Iowa operations of the subsidiary provide an independent basis for taxation not present in the case of the foreign subsidiary. A more appropriate comparison is between corporations whose subsidiaries do not do business in Iowa.

provisions of the *same* statute." Brief for United States as *Amicus Curiae* 14, n. 19 (emphasis added). We find no authority, however, for the principle that discrimination against foreign commerce can be justified if the benefit to domestic subsidiaries might happen to be offset by other taxes imposed not by Iowa, but by other States and by the Federal Government.

Finally, Iowa insists that even if discrimination against foreign commerce does result, the statute is valid because it is intended to promote administrative convenience rather than economic protectionism. Iowa contends that the adoption of the federal definition of "taxable income," which includes foreign subsidiary dividends, provides significant advantages both to the taxpayers and to the taxing authorities. Taxpayers may compute their Iowa tax easily based on their federal calculations, and the Iowa authorities may rely on federal regulations and interpretations and may take advantage of federal efforts to monitor taxpayer compliance. See 465 N. W. 2d, at 669.

We do not minimize the value of having state forms and auditing procedures replicate federal practice. Absent a compelling justification, however, a State may not advance its legitimate goals by means that facially discriminate against foreign commerce. See *Philadelphia* v. *New Jersey*, 437 U. S. 617, 626–628 (1978); *Maine* v. *Taylor*, 477 U. S. 131, 148, n. 19 (1986). In this instance, Iowa could enjoy substantially the same administrative benefits by utilizing the federal definition of taxable income, while making adjustments that avoid the discriminatory treatment of foreign subsidiary dividends. Many other States have adopted this approach.[24] It is apparent, then, that this is not a case in which the State's goals "cannot be adequately served by reasonable nondiscriminatory alternatives." *New Energy Co. of Indiana* v. *Limbach*, 486 U. S. 269, 278 (1988). Even if such

---

[24] See App. to Pet. for Cert. 74a–75a.

adjustments would diminish the administrative benefits of adopting federal definitions, this marginal loss in convenience would not constitute the kind of serious health and safety concern that we have sometimes found sufficient to justify discriminatory state legislation. Cf. *Maine* v. *Taylor*, 477 U. S., at 151; *Sporhase* v. *Nebraska ex rel. Douglas*, 458 U. S. 941, 956–957 (1982).

## III

Iowa need not adopt the federal definition of taxable income. Nor, having chosen to follow the federal system in part, must Iowa duplicate that scheme in all respects. The adoption of the federal system in whole or in part, however, cannot shield a state tax statute from Commerce Clause scrutiny. The Iowa statute cannot withstand this scrutiny, for it facially discriminates against foreign commerce and therefore violates the Foreign Commerce Clause.[25]

The judgment of the Supreme Court of Iowa is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

CHIEF JUSTICE REHNQUIST, with whom JUSTICE BLACKMUN joins, dissenting.

Petitioner in this case limits its Commerce Clause challenge to a single argument—that Iowa's taxing scheme unconstitutionally discriminates against foreign commerce. It has brought a *facial* challenge to the Iowa taxing scheme. The burden on one making a facial challenge to the constitutionality of a statute is heavy; the litigant must show that "no set of circumstances exists under which the Act would be valid. The fact that [the tax] might operate unconstitutionally under some conceivable set of circumstances is

---

[25] Having concluded that the Iowa statute violates the Foreign Commerce Clause, we do not reach Kraft's challenge to the statute under the Equal Protection Clause.

insufficient to render it wholly invalid." *United States* v. *Salerno*, 481 U. S. 739, 745 (1987).

The only case dealing with the Foreign Commerce Clause substantially relied on by the Court in its opinion upholding petitioner's challenge to the Iowa statute is *Japan Line, Ltd.* v. *County of Los Angeles*, 441 U. S. 434 (1979). It is important, therefore, to note how different are the facts in that case from those in the present one. In *Japan Line*, California had levied a nondiscriminatory ad valorem property tax on cargo containers which were owned by Japanese shipping companies based in Japan, had their home ports in Japan, and were used exclusively in foreign commerce. The containers were physically present in California for a fractional part of the year, but only as a necessary incident of their employment in foreign commerce. Japan levied no tax on similarly situated property of United States shipping companies.

In *Container Corp. of America* v. *Franchise Tax Bd.*, 463 U. S. 159 (1983), where we upheld a California franchise tax against a claim of violation of the Foreign Commerce Clause, we noted at least two distinctions between that case and our earlier decision in *Japan Line*. First, the tax there imposed was not on a foreign entity, but on a domestic corporation. Second, the United States did not file a brief urging that the tax be struck down. 463 U. S., at 196. In the present case, like *Container Corporation*, the Iowa tax is imposed on a domestic corporation, not on a foreign entity. And in the present case, the Executive Branch has not merely remained neutral, as it did in *Container Corporation*, but has filed a brief urging that the tax be sustained against the Foreign Commerce Clause challenge.

The Court agrees that the Iowa tax involved here does not favor subsidiaries incorporated in Iowa over foreign subsidiaries, but points out that the tax does favor subsidiaries incorporated in other States over foreign subsidiaries. Iowa obviously has no selfish motive to accomplish such a result,

and the absence of such a motive is strong indication that none of the local advantage which has so often characterized our Commerce Clause decisions is sought here. See, *e. g.,* *Bacchus Imports, Ltd.* v. *Dias,* 468 U. S. 263, 268 (1984). Indeed, petitioner carries on operations in Iowa, where the "State's own political processes [can] serve as a check against unduly burdensome regulations." *Kassel* v. *Consolidated Freightways Corp. of Del.,* 450 U. S. 662, 675 (1981).

But assuming that it is sufficient to show simply that non-Iowa domestic "commerce" enjoys a benefit not enjoyed by foreign "commerce," the Court surely errs in concluding that such a showing has been made in the present case. Because petitioner has chosen to make a facial challenge to the Iowa statute, the record is largely devoid of any evidence to suggest that Iowa's taxing scheme systematically works to discourage foreign commerce to the advantage of its domestic counterpart.

Petitioner's failures in this respect are severalfold. First, it is unclear on the present record what amount of foreign commerce is affected by the Iowa statute. The difficulty flows from our inability to make any useful generalizations about a corporation's business activity based solely on the corporation's country of incorporation. The Court recognizes that, in this era of substantial international trade, it is simple-minded to assume that a corporation's foreign domicile necessarily reflects that it is principally, or even substantially, engaged in foreign commerce. *Ante,* at 76. To the contrary, foreign domiciled corporations may engage in little or even zero foreign activity. In such cases, the suggestion that Iowa's tax has any real effect on foreign commerce is absurd; petitioner certainly has not demonstrated "by 'clear and cogent evidence' that [the state tax] results in extraterritorial values being taxed" in all cases. *Franchise Tax Bd., supra,* at 175. In turn, Iowa's tax can hardly be found to always unconstitutionally discriminate against foreign commerce. Given that petitioner's burden is to demonstrate

that there are no circumstances in which Iowa's statute could be constitutionally applied, the existence of such a possibility should be fatal to petitioner's chances of success in this case.

The Court suggests that, even if foreign domiciled corporations are involved in no foreign trade, the dividend payments from subsidiary to parent are themselves "foreign commerce." *Ante*, at 76. Again, this may be true in certain circumstances, as the payment of a dividend may represent a real flow of capital across international boundaries. But certainly there are other situations where the "foreign" aspects of a transaction are extraordinarily attenuated, and any burdening of such transactions concomitantly would not raise Foreign Commerce Clause concerns. Consider, for example, the case of a "foreign" subsidiary—*i. e.*, one that is incorporated in a foreign country—but with operations exclusively in the United States. It has no assets in the foreign country, no operations, nothing of value whatsoever. The corporation declares a dividend payable to its United States parent. The payment in such circumstance may well be accomplished simply by debiting one New York bank account and crediting another. To characterize this as "foreign commerce" seems to me to stretch that term beyond all recognition. And again, the existence of such a possibility is sufficient to undermine petitioner's facial challenge.

The Court appears to think these problems are surmounted by the parties' stipulation that petitioner's subsidiaries operated in "foreign commerce" and that foreign subsidiaries are often established for legitimate business reasons. *Ibid.* Of course, a stipulation between parties cannot bind this Court on a question of law. Moreover, even the facts that the stipulation establishes are sparse. It tells us nothing about the ratio in modern commerce of "real" foreign subsidiaries to their domestically oriented cousins. Indeed, on the present record it is impossible even to establish the scope of operation of Kraft's subsidiaries. Compare App. to Pet. for Cert. 52a–53a (reporting foreign tax pay-

ments by 6 of petitioner's subsidiaries) with *id.*, at 76a–79a (listing petitioner's 86 nonwholly owned subsidiaries). Without some greater detail, I think it is impossible to conclude that the Iowa taxing scheme would have such real and substantial effects that it could never survive constitutional muster.

Finally, I cannot agree that, even if the dividend payments made taxable by the Iowa scheme are foreign commerce, that Iowa impermissibly discriminates against such payments. To be sure, two Iowa corporations, one with a foreign subsidiary and one with a domestic non-Iowa subsidiary will in some cases pay a different total tax. But this does not constitute unconstitutional discrimination because, as far as the record demonstrates, Iowa's taxing scheme does not result in foreign commerce being systematically subject to higher tax burdens than domestic commerce. Given that 45 of 50 States tax corporations on their net income, *ante,* at 80, n. 22, in deciding to tax only a foreign subsidiary's dividend payments, rather than the subsidiary's total income, Iowa assures that the subsidiary's tax burden is less than that faced by its domestic counterpart. The deduction that Iowa extends to domestically based dividend payments simply helps to avoid what would otherwise be the near certainty that the domestic income would be doubly taxed—once when earned as income by the subsidiary and a second time when paid to the parent corporation.

But Iowa's attempt to take account of this near certainty with respect to domestic earnings does not in turn require it to make a similar assumption with respect to income earned by foreign sources. As *amicus* United States correctly points out, "[t]he record in this case fails to indicate even the existence, much less the nature, of such local-level foreign taxes . . . . Nor is there any evidence to reflect the credits or reductions that foreign local governments would apply or allow." Brief for United States as *Amicus Curiae* 15, n. 21.

Finally, as I would reject petitioner's Foreign Commerce Clause claim, I must go on to consider whether its Equal Protection Claim fares any better. It does not. In defending a tax classification such as this, a State need only demonstrate that the classification is rationally related to legitimate state purposes. *Exxon Corp.* v. *Eagerton*, 462 U. S. 176, 195 (1983). The statute will be upheld if it could reasonably be concluded "that the challenged classification would promote a legitimate state purpose." *Id.*, at 196. Administrative efficiency is certainly a legitimate state interest and Iowa's reliance on the federal taxing scheme obviously furthers its achievement. Petitioner's claim, therefore, must fail.

I would uphold the Iowa tax statute against this facial challenge.