hWALTZER, Judge.
The Secretary of the Department of Revenue and Taxation for the State of Louisiana (hereinafter “the Department”) appeals an August 31, 1994 judgment of the Civil District Court granting a Motion for Summary Judgment by Dixie Rice Agricultural Corporation, Inc. (hereinafter “the taxpayer”) and denying the Department’s Motion for Summary Judgment.
In 1991 the Department audited the taxpayer’s books for the years 1988, 1989 and 1990 and issued a “Notice of Tax Due” claiming that an additional $231,844.00 plus interest was due in state franchise taxes for those years. The Department claimed (1) the taxpayer failed to include the “Foreign Currency Translation Adjustment” attributable to Valhi Group, Inc., a corporation engaged in foreign commerce, in its franchise tax base and (2) the taxpayer incorrectly interpreted its interest in the Valhi Group, Inc. as interest in a subsidiary and thus failed to include that interest in its franchise tax base. The taxpayer filed a “Notice of Protest” and the Department filed suit in Civil District Court. Both the Department and the taxpayer filed Motions for Summary Judgment, resulting in the judgment herein appealed.
I. FOREIGN CURRENCY TRANSLATION ADJUSTMENT
On an accounting balance sheet, every entry on a credit side has a corresponding entry on the debit side so all totals will equal each other and thus balance. In order to bring uniformity to the manner in which people write their balance sheets, various accounting organizations issue regulations and guidelines termed accounting standards. The Financial Accounting Standards Board is one such organization.
In December of 1981, the Financial Accounting Standards Board issued Statement of Financial Accounting Standard No. 52, “Foreign Currency Translation” (“FAS 52”). FAS 52 sets forth the methodology to be used in computing a FCTA (Foreign Currency ^Translation Adjustment) and how such adjustments should be recorded by a foreign entity’s U.S. Investor.
A FCTA arises from translating a subsidiary’s financial statements from a foreign currency into U.S. Dollars. The foreign subsidiary’s assets and liabilities must be translated at the balance sheet date’s current exchange rate, whereas, income and *730 expense accounts must be translated at an appropriate weighted-average exchange rate for the income statement period. As a result of the exchange rate differential created by this translation process, the foreign subsidiary’s assets minus liabilities will not equal its stockholders’ equity. The amount necessary to create equality is a FCTA. The FCTA represents the cumulative effect of translating balance sheet accounts at one exchange rate and income statement accounts at a different rate. (Emphasis supplied).
An example of how the FCTA works is provided below:
X Corp., a U.S. company, owns 40% of Y Corp., a foreign company. X purchased its Y investment at January 1, 1991 for $1,000.00 which equaled 40% of Y’s net equity (assets minus liabilities). Y’s currency is A. At January 1, 1991, Al = $1. During 1991, Y earns A50 which must be converted to U.S. dollars at a weighted 1991 average. The weighted average used to convert Y’s 1991 earnings is A.8 = $1 (i.e., on a weighted average basis, the U.S. currency weakened 20% against A during 1991). However, at December 31, 1991, X’s balance sheet date, the exchange rate has returned to its January 1, 1991 rate (i.e., Al = $1). Therefore, based on these assumptions, FASB 52 requires the following computations at December 31, 1991, X’s balance sheet date:
Y’s 1991 net income converted to U.S. $ on a weighted average basis (A50/.8) $62.50
X’s ownership percentage X 40%
X’s 1991 investment increase in Y due to Y’s net income $ 25
X’s January 1,1991 investment in Y in U.S. $1,000
X’s investment in Y at December 31,1991 based on net income conversion $1,025
Y’s net equity at January 1, 1991 (Al,000/40%) A2,500
Y’s 1991 net income _50
Y’s net equity at December 31,1991 A2,550 X’s ownership percentage X 40%
X’s ownership in Y’s equity at December 31, 1991 Al,020
Converted to U.S. $ at December 31, 1991 (Al = $1) X_1
_JjX’s investment based on net income conversion $1,025
X’s investment based on balance sheet conversion (1,020)
Increase in X’s investment in Y and amount of FCTA booked to X’s equity $_5
The $5 Foreign Currency Translation Adjustment (FCTA) provides no incremental value to X, although it is included in its equity at December 31, 1991. X’s value in 40% of Y has not increased by $25 during 1991, it has increased by only $20 (i.e., Y’s net equity change). If X sold its Y interest in U.S. currency at December 31, 1991 for 40% of Y’s net equity (assets minus liabilities), the sales price would be $1,020.
Thus the FCTA is an accounting fiction and does not represent real money or real value. We further note that Article I Section 8 of the U.S. Constitution provides that “Congress shall have the Power to regulate Commerce with Foreign Nations ...” This enumerated power operates directly to restrict and limit any exercise of a state’s taxing power. Kraft General Foods, Inc. v. Iowa Dept. of Revenue, 505 U.S. 71, 112 S.Ct. 2365, 2367, 120 L.Ed.2d 59, 69 (1992). From this grant of power emanates the broad principle that a state may not impose, by any form of taxation, a burden on foreign commerce. Id. The trial court correctly found that the FCTA is not includible in the franchise tax base because it is a fictitious entry and because to do so would be a violation of the Foreign Commerce Clause.
II. INDIRECT OWNERSHIP
The Department argues that under LSA-R.S. 47:606(B) the Valhi Group, Inc. (hereinafter “VGI”) is not the taxpayer’s subsidiary of the taxpayer, thus the taxpayer erred in failing to include its interest in the Valhi Group in its franchise tax base. The taxpayer argues that under LSA-R.S. 47:606(B) the *731 Valhi Group is its subsidiary. LSA-R.S. 47:606(B) provides:
B. Allocation of intercompany items. For the purpose of allocation, investments in, advances to, or revenue from a parent or subsidiary corporation shall be allocated to Louisiana on the basis of the percentage of capital employed in Louisiana for corporation franchise tax purposes by the parent or subsidiary corporation. A subsidiary corporation is any corporation the majority of the capital stock of which is actually, wholly or substantially owned by another corporation and whose management, business policies and operations are, howsoever, actually, wholly or substantially controlled by 14another corporation; which latter corporation shall be termed the parent corporation. (Emphasis added).
The issue is whether “actual substantial ownership” is only direct ownership or includes both direct and indirect ownership.
The Department argues that under North Baton Rouge Development Co., Inc. v. Collector of Revenue, 304 So.2d 293 (La.1974), only direct ownership of stock meets the test of 606(B).
The taxpayer contends that both direct and indirect ownership of stock meets the test of 606(B), noting that the statute on its face does not use the word “direct”, which it clearly could have if the legislature had so intended and that the use of the word “actually” contemplates situations in which there may be nominees named on the stock or where the stock is really owned by someone other than it appears at first glance to be. Hence, the taxpayer argues, the use of the word “actually” meaning “truly” owned instead of “apparently” owned.
Initially we note that taxing statutes must be strictly construed against the taxing authority. Collector of Revenue v. Wells Fargo Leasing Corp., 393 So.2d 1244 (La.1981); Treat v. White, 181 U.S. 264, 21 S.Ct. 611, 45 L.Ed. 853 (1901) and a tax statute susceptible of more than one reasonable interpretation must be interpreted most favorably to the taxpayer Goudchaux/Maison Blanche, Inc. v. Broussard, 590 So.2d 1159 (La.1991) citing Chicago Bridge & Iron Co. v. Cocreham, 317 So.2d 605 (La.1975) cert. denied 424 U.S. 953, 96 S.Ct. 1427, 47 L.Ed.2d 359 (1976).
On January 1, 1980, approximately 5 years after North Baton Rouge, the Department of Revenue and Taxation promulgated the following regulations:
606.40 A subsidiary corporation is any corporation the majority of the capital stock of which is actually, wholly or substantially owned by another corporation and whose management, business policies and operations are, however, actually, wholly or substantially controlled by another corporation; such latter corporation shall be termed the parent corporation. 606.41 It shall be presumed that the OWNERSHIP, either directly or indirectly, of MORE THAN FIFTY PERCENT of the Voting stock of any corporation constitutes control of that corporation’s management, business policies and operations for purposes of application of this subsection, whether such control is documented by formal directives from the owner of such stock or not. (Emphasis supplied).
156 La.Reg. 25, 33 (Jan. 30, 1980) codified at 10 LAC Section 61:1.306 at p. 28 (Sept. 1987).
In the instant case, a controlling faction of Dixie’s directors, namely three out of five, constitutes 100% of the boards of Con-tran, NCL, NOA, and VGI. The officers of VGI, NCL, NOL, and Contran are identical. Seven of the nine officers of VGI, NCL, NOL and Contran are officers of Dixie. These seven officers control the policy for all of the Contran affiliated companies. Dixie owns 15.3% of VGI’s stock directly and indirectly owns the remaining 84.7% through NOA’s 11.4% and NCL’s 73.3%.
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 634 So.2d 1180 (La.1994); Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991).
A summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together *732 with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.CIV.P. art. 966(B).
After reviewing the pleadings, affidavits, and statements of facts herein, we find that the trial court correctly concluded that the taxpayer was entitled to judgment as a matter of law and that no question of material fact existed. Accordingly, the summary judgment was properly granted.
For the reasons discussed, the judgment of the district court is affirmed.

AFFIRMED.

JONES, J., dissents with written reasons.