

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-10-2006

# In Re: Mintze

Precedential or Non-Precedential: Precedential

Docket No. 03-4745

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"In Re: Mintze " (2006). *2006 Decisions.* Paper 1682.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1682

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-4745

_____

IN RE: ETHEL MARIE MINTZE,

Debtor

ETHEL MARIE MINTZE
v.

AMERICAN GENERAL FINANCIAL SERVICES, INC.,
f/k/a AMERICAN GENERAL FINANCE, INC.;
AMERICAN GENERAL CONSUMER DISCOUNT CO.,
collectively, "American General",

Appellants

EDWARD SPARKMAN, ESQ.;
FREDERIC J. BAKER, ESQ.,
Trustees

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cv-02113 )
District Judge: Honorable Mary A. McLaughlin

_____

Argued January 10, 2005

BEFORE: ROTH and CHERTOFF*, <u>Circuit Judges</u>, and
RESTANI**, <u>Chief Judge</u>

(Filed: January 10, 2006)

*This case was submitted to the panel of Judges Roth, Chertoff and Restani. Judge Chertoff resigned after submission, but before the filing of the opinion. The decision is filed by a quorum of the panel. 28 U.S.C. § 46(d).
**Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

Henry F. Reichner, Esquire (Argued)
Charles L. Becker, Esquire
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

<u>Counsel for Appellants</u>

Irv Ackelsberg, Esquire (Argued)
Community legal Services, Inc.
3638 N. Broad Street
Philadelphia, PA 19140

Paul Bland, Esquire
Trial Lawyers for Public Justice
1717 Massachusetts Avenue. NW

Suite 800
Washington, D.C. 20036

Counsel for Appellee

---

OPINION OF THE COURT

---

ROTH, Circuit Judge

In this appeal, we are asked to determine whether the Bankruptcy Court's decision to deny enforcement of an otherwise applicable arbitration clause was proper.

Ethel M. Mintze and American General Consumer Discount Company entered into a loan agreement. Mintze subsequently filed a voluntary Chapter 13 bankruptcy petition. After American General filed a proof of claim, Mintze filed a complaint in the Bankruptcy Court seeking, *inter alia*, to enforce a pre-petition rescission of the loan agreement. American General Consumer Discount Company and its

-3-

parent company, American General Financial Services, (collectively "AGF") then filed a Motion to Compel Arbitration, which the Bankruptcy Court denied. AGF claims that the Bankruptcy Court did not have the discretion to deny enforcement of the arbitration agreement.

Based on the provisions of the Federal Arbitration Act of 1947, 9 U.S.C. § 1-14, (FAA) and Mintze's failure to establish that Congress intended to preclude waiver of judicial remedies for her claims, we hold that the Bankruptcy Court lacked the authority and discretion to deny enforcement of the arbitration provision. We reverse the District Court Order affirming the Bankruptcy Court's decision, and we remand the case to the District Court to remand it to the Bankruptcy Court with instructions to order the parties to engage in arbitration in accordance with the terms of the arbitration provision.

-4-

I.

Ethel M. Mintze is a retired and disabled homeowner. She lives with her children in a row house in Philadelphia. Late in the year 2000, she had to replace the heater in her home. The cost of a new heater was $3800. Unfortunately, Mintze could not afford it. A&M Heating, a heating contractor, referred Mintze to AGF. On October 20, 2000, Mintze and AGF entered a loan agreement, whereby AGF loaned Mintze the money to purchase a new heater in exchange for Mintze consolidating that loan and other debt, including her mortgage, into a home equity loan with AGF.

The principle balance of this agreement was $44,716.34, and consisted of her mortgage ($25,602.55); the balance of her credit card debt ($10,463.51); the cost of the new heater (about $3800); settlement charges ($2821); and premiums for two life insurance policies ($1629 in a credit

life insurance policy,[1] and $400 in a term life insurance policy). The terms of the loan agreement were payments of $551.13 per month over fifteen years at an annual percentage rate of 13.44%. The loan agreement also contained a demand clause and an arbitration clause. The demand clause allowed AGF to accelerate the loan after five years. The arbitration clause stated that "all claims and disputes arising out of, in connection with, or relating to [the] loan" must "be resolved by binding arbitration."

Mintze began to fall behind in her payments to AGF, and on December 4, 2001, she voluntarily filed a Chapter 13 petition for bankruptcy. AGF filed a proof of claim against Mintze's estate. Mintze then filed a complaint against AGF

---

[1] We note that Mintze was not in fact eligible for the credit life insurance policy because of a pre-existing health condition.

in the Bankruptcy Court. In her complaint, Mintze alleged that AGF induced her to enter an illegal and abusive home equity loan that resulted in AGF holding a mortgage lien against her home; she sought to enforce a pre-petition rescission of the mortgage that she asserted under the Truth In Lending Act, 15 U.S.C. §§ 1601-1667f ("TILA"); and she asserted several other claims under federal and state consumer protection laws.[2]

On May 20, 2002, AGF filed a Motion to Compel Arbitration. During the motion hearing, the Bankruptcy Judge sought to confirm two stipulations of the parties. First,

---

[2] Mintze raised claims under the Home Owners Equity Protection Act of 1994, 15 U.S.C. §§ 1601-15 (HOEPA); the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f (ECOA); the Pennsylvania Home Improvement Finance Act, 73 PA. CONS. STAT. §§ 500-101–500-602 (HIFA); and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. CONS. STAT. § 201-1--201-9.3 (UTPCPL).

THE COURT: . . . [L]et me first confirm that the parties have agreed, at least for purposes of this argument, that the matter before me is a core proceeding.

[AGF's Counsel]: Yes, Your Honor.

[Mintze's Counsel]: Yes, Your Honor.

Second,

THE COURT: . . . [I]n Zimmerman, as in this case, [the proceeding] involved a core matter. And the upshot of that would mean that whether I choose to grant the relief is within my discretion. Both counsel agree that in terms of the standard that I'm applying?

[Mintze's Counsel]: Yes, Your Honor.

THE COURT: Okay. Now, I'll ask the same type of question on a different issue, and I know I might not get agreement on this one, but

-8-

I'll ask it anyway.

As is apparent, counsel for AGF made no response to the question of the court concerning the court's discretion to grant AGF's Motion to Compel Arbitration. Based on this exchange, the Bankruptcy Court determined that the proceeding before it was a core proceeding and that it had the discretion to deny enforcement of the arbitration clause. The Bankruptcy Court then decided that the matter was best resolved in the bankruptcy court system because the outcome of Mintze's rescission claim would affect her bankruptcy plan and the distribution of monies to her other creditors. *See Mintze v. Am. Gen. Fin., Inc. (In re Mintze)*, 288 B.R. 95 (Bankr. E.D. Pa. 2003) (*Mintze I*). On January 21, 2003, AGF filed a timely appeal. Finding that the Bankruptcy Court acted within its discretion, the District Court affirmed the Bankruptcy Court Order. *See In re Mintze*, 2003 WL

-9-

22701020 (E.D. Pa. 2003) (*Mintze II*).  On December 11, 2003, AGF filed a timely appeal.

On September 24, 2004, while the current case was pending before us, the Bankruptcy Court issued an Order in response to AGF's Motion for Summary Judgment with respect to several of Mintze's claims.  The Court granted AGF's motion with respect to Mintze's TILA and HOEPA claims.  The Court also marked Mintze's HIFA claim as withdrawn.

## II.

This appeal comes to us from the United States District Court for the Eastern District of Pennsylvania.  The case originated in the Bankruptcy Court for that district.  The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b).  The District Court had appellate jurisdiction under 28 U.S.C. § 158(a)(1) and 9 U.S.C. §

16(a)(1)(B) (providing appeal from an order denying arbitration). We have appellate jurisdiction pursuant to 28 U.S.C. § 158(d) and 9 U.S.C. § 16(a)(1)(B).

We give plenary review to a decision of a district court sitting as an appellate court in a bankruptcy proceeding. *See The Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 559 (3d Cir. 1994). Therefore, we review "the Bankruptcy Court's findings of fact under the clearly erroneous standard and conclusions of law under a *de novo* standard." *Halper v. Halper*, 164 F.3d 830, 835 (3d Cir. 1999). We only review the Bankruptcy Court's decision for abuse of discretion if we first determine, under plenary review, that it had the discretion to exercise. *See Hays & Co. v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1156 (1989) (refusing to review case for abuse of discretion because court "committed a more

-11-

fundamental error in determining that it had discretion to exercise").

## III.

AGF argues that the Bankruptcy Court lacked the discretion to deny enforcement of the arbitration clause in the mortgage agreement. The District Court held, and Mintze contends, that the Bankruptcy Court had such discretion and that it was within its bounds of discretion when it ruled against AGF. The parties' arguments stem from the two stipulations that the parties made at the hearing on AGF's Motion to Compel. At the hearing, the parties allegedly stipulated that the proceeding in question was a "core" proceeding and that the Bankruptcy Court had the discretion to deny enforcement of the arbitration clause in the loan agreement. AGF claims that, despite its concession that the proceeding was a "core" proceeding, the proceeding was a

-12-

non-core proceeding and that, even if the proceeding is deemed to be core, such a determination did not automatically give the Bankruptcy Court the discretion to deny arbitration. AGF claims that the Bankruptcy Court did not have discretion to deny enforcement of the arbitration clause because the standard set out in *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220 (1987), was not satisfied.

Mintze claims that AGF is bound by its stipulations. According to Mintze, the Bankruptcy Court had the discretion to deny arbitration and our standard of review is for abuse of that discretion, which Mintze claims was not abused. Mintze also claims that we should dismiss AGF's claims under the doctrine of judicial estoppel and our rule against considering new issues on appeal.

Before we can determine whether the Bankruptcy Court abused its discretion, we must determine whether the

-13-

Bankruptcy Court had any discretion to exercise. *See Hays*, 885 F.2d at 1156 (refusing to address the abuse of discretion issue because the court "committed a more fundamental error in determining that it had discretion to exercise"). We are not bound by the parties' stipulations concerning questions of law. *See Kraft Gen. Foods, Inc. v. Iowa Dep't of Rev. & Fin.*, 505 U.S. 71, 85 (1992). Whether a bankruptcy proceeding is a core or non-core proceeding is a question of law. *See Halper*, 164 F.2d at 836-37. *See also U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indemn. Ass'n, Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631, 636 (2d Cir. 1999). Whether a bankruptcy court has the discretion to deny enforcement of an arbitration clause is also a question of law. *See Hays*, 885 F.2d at 1152. Therefore, the parties' stipulations in this case are not binding on us. We will address each stipulation and its effect on whether the Bankruptcy Court had the discretion

-14-

to deny enforcement of the arbitration agreement.

A.

Bankruptcy proceedings are divided into two categories: core and non-core. *See* 28 U.S.C. § 157. The distinction between the two categories is relevant because the type of proceeding may determine the ultimate authority of the bankruptcy court. In a core proceeding, a bankruptcy court has "comprehensive power to hear, decide and enter final orders and judgments." *Halper*, 164 F.3d at 836 (citing 28 U.S.C. § 157(b)(1)). In addition, the bankruptcy court can make findings of fact and conclusions of law. In contrast, the bankruptcy court's authority is significantly limited in non-core proceedings. In a non-core proceeding, the bankruptcy court is allowed only to make proposed findings of fact and proposed conclusions of law, which it submits to the district court. *See* 28 U.S.C. § 157(c)(1).

The core/non-core distinction does not, however, affect whether a bankruptcy court has the discretion to deny enforcement of an arbitration agreement. *See Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum)*, 118 F.3d 1056, 1068 (5th Cir. 1997) (quoting *In re Statewide Realty Co.*, 159 B.R. 719, 722 (Bankr. D.N.J. 1993)). It merely determines whether the bankruptcy court has the jurisdiction to make a full adjudication. Because this distinction does not affect whether the Bankruptcy Court had the discretion to deny arbitration, we will accept the parties' stipulation that the proceeding was a "core" proceeding for the purposes of deciding whether the Bankruptcy Court had discretion.

## B.

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A court has the power to stay a proceeding if it determines that an issue falls under an applicable arbitration clause. 9 U.S.C. § 3. If one of the parties fails to comply with such an agreement, a court may order "the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

The FAA has established a strong policy in favor of arbitration. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). It requires rigorous enforcement of arbitration agreements. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220 (1985). By itself, the FAA mandates enforcement of applicable arbitration agreements even for federal statutory claims. *See McMahon*, 482 U.S. at 226.

The FAA's mandate can, however, be overridden. If a

-17-

party opposing arbitration can demonstrate that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue," the FAA will not compel courts to enforce an otherwise applicable arbitration agreement. *McMahon*, 482 U.S. at 227. To overcome enforcement of arbitration, a party must establish congressional intent to create an exception to the FAA's mandate with respect to the party's statutory claims. Congressional intent can be discerned in one of three ways: (1) the statute's text, (2) the statute's legislative history, or (3) "an inherent conflict between arbitration and the statute's underlying purposes." *McMahon*, 482 U.S. at 227 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 632-37 (1985)).

Shortly after the Supreme Court decided *McMahon*, we applied its standard to a bankruptcy case that is similar to the present case. *See Hays*, 885 F.2d 1149. In *Hays*, we held that

-18-

where a party seeks to enforce a debtor-derivative pre-petition contract claim, a court does not have the discretion to deny enforcement of an otherwise applicable arbitration clause. *See* 885 F.2d at 1161. *Hays* involved a trustee to the debtor's estate,[3] bringing causes of action against a brokerage firm that managed two corporate accounts for the debtor. The complaints alleged federal and state securities violations, as well as some statutory claims created by the Bankruptcy Code. The *Hays* Court was presented with the question whether the Bankruptcy Code conflicts with the FAA "in such a way as to bestow upon a district court discretion to decline to enforce an arbitration agreement" with respect to the trustee's claims. Applying the *McMahon* standard, we said

---

[3] A trustee is the representative of the debtor's estate. 11 U.S.C. § 323(a). The trustee has the capacity to sue and be sued on behalf of the debtor's estate. 11 U.S.C. § 323(b).

that

> the district court lacked the
> authority and discretion to deny
> enforcement of the arbitration
> clause *unless* [the trustee] had met
> its burden of showing that the
> text, legislative history, or purpose
> of the Bankruptcy Code conflicts
> with the enforcement of an
> arbitration clause in a case of this
> kind, that is, *a non-core*
> *proceeding brought by a trustee to*
> *enforce a claim of the estate in a*
> *district court*.

*Hays*, 885 F.2d at 1156-57 (emphasis added). We held that

whether the *McMahon* standard is met determines whether the

court has the discretion to deny enforcement of an otherwise

applicable arbitration clause. *See Hays*, 885 F.2d at 1156-57.

*See also Nat'l Gypsum*, 118 F.3d at 1067 ("The 'discretion' . .

. should exist only where a particular bankruptcy proceeding

meets the standard for nonenforcement of an arbitration

clause set forth in *McMahon* . . ..").  The starting point is

*McMahon*.  The Bankruptcy Court and District Court,

however, applied the *McMahon* standard after determining

that the Bankruptcy Court had the discretion to deny

arbitration.  Those courts applied *McMahon* to determine

whether the Bankruptcy Court *should* have exercised its

discretion, rather than to determine whether it had the

discretion to exercise.  This approach is not what is required

by *McMahon* and *Hays*.

Mintze contends, and the District Court held, that our

*Hays* decision primarily applies to non-core proceedings.  *See*

*In re Mintze*, No. 03-2113, 2003 WL 22701020, at *2 (E.D.

Pa. Nov. 12, 2003) (*Mintze II*) (citing *U.S. Lines*, 197 F.3d at

640; *Pardo v. Pacificare of Tex., Inc. (In re APF Co.)*, 264

B.R. 344, 361-62 (Bankr. D. Del. 2001); *Weinstock v. Frank*

*(In re Weinstock)*, No. 96-31147DWS, 1999 Bankr. LEXIS

616, at *23 (Bankr. E.D. Pa. 1999); *Sacred Heart Sacred*

*Heart Hosp. v. Independence Blue Cross (In re Sacred Heart Hosp.)*, 181 B.R. 195, 202 (Bankr. E.D. Pa. 1995); *In re FRG*, 115 B.R. 72, 74 (E.D. Pa. 1990)).  This interpretation stems from the emphasized clause of the above quoted passage:  "a non-core proceeding brought by a trustee to enforce a claim of the estate in a district court."

We disagree with this interpretation – that the application of *Hays* is limited to non-core proceedings.  First, *Hays* applied the Supreme Court's *McMahon* standard, which applies to all statutory claims subject to applicable arbitration clauses, not just to those claims arising in non-core bankruptcy proceedings.  Second, the *Hays* decision did not seek to distinguish between core and non-core proceedings; rather, it sought to distinguish between causes of action derived from the debtor and bankruptcy actions that the Bankruptcy Code created for the benefit of the creditors of the

-22-

estate. *See Nat'l Gypsum*, 118 F.3d at 1068 (quoting *In re Statewide*, 159 B.R. at 722) (holding that the relevant distinction in *Hays* is that between debtor-derivative claims and Bankruptcy Code established claims, and not the distinction between core and non-core proceedings). Third, the two cases that the District Court cited from other circuits to support its holding that the Bankruptcy Court did not abuse its discretion, actually support the contention that *Hays* applies to *core* proceedings. The District Court cited *United States Lines* and *National Gypsum*. Both of these cases expressly state that a finding that a proceeding is a core proceeding does not automatically give a bankruptcy court the discretion to deny arbitration. Rather, those cases indicate that the *McMahon* standard must still be satisfied before a bankruptcy court has such discretion. *See U.S. Lines*, 197 F.3d at 640; *Nat'l Gypsum*, 118 F.3d at 1067.

-23-

We find that the standard we articulated in *Hays* applies equally to core and non-core proceedings. *See Nat'l Gypsum*, 118 F.3d at 1067 ("[W]e believe that nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceedings, i.e., whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether the arbitration proceeding would conflict with the purposes of the Code."). *See also Pardo v. Pacificare of Tex., Inc. (In re APF)*, 264 B.R. 344, 362 (Bankr. D. Del. 2001) (citing *Nat'l Gypsum*, 118 F.3d at 1067; *Selcke v. New England Ins. Co.*, 995 F.2d 688, 691 (7th Cir. 1993)) (holding that in a core proceeding, the *McMahon* standard must be satisfied before the bankruptcy court has the discretion to deny arbitration). Where an otherwise applicable arbitration clause exists, a bankruptcy court lacks the authority and discretion to deny its

-24-

enforcement, *unless* the party opposing arbitration can establish congressional intent, under the *McMahon* standard, to preclude waiver of judicial remedies for the statutory rights at issue.

Our task then is to determine whether Mintze has established congressional intent to preclude waiver of judicial remedies for the statutory rights at issue. We find no evidence of such intent in either the statutory text or the legislative history of the Bankruptcy Code. We are, therefore, left to determine whether there is an inherent conflict between arbitration and the Bankruptcy Code.

The Bankruptcy Court concluded that the ultimate decision on Mintze's rescission claim will have an effect on the rights of the other creditors to Mintze's estate. Determining that the potential effect on the order of priority and the amount of distribution to Mintze's other creditors was

sufficient to create an inherent conflict between the

Bankruptcy Code's underlying purposes and arbitration, the

Bankruptcy Court concluded that the proceeding was best left

in the Bankruptcy Court. The District Court affirmed the

Bankruptcy Court, stating that its decision was "within the

appropriate bounds of discretion . . .."

We cannot agree with this conclusion. First, to

override the FAA's mandate for enforcement of arbitration,

the *McMahon* standard requires congressional intent "to

preclude a waiver of judicial remedies for the *statutory rights*

at issue." *McMahon*, 482 U.S. at 227 (emphasis added). The

statutory claims that Mintze has raised are based on TILA and

several federal and state consumer protection laws.[4] Mintze

has failed to raise any statutory claims that were created by

---

[4] *See supra* n.2.

the Bankruptcy Code. With no bankruptcy issue to be decided by the Bankruptcy Court, we cannot find an inherent conflict between arbitration of Mintze's federal and state consumer protection issues and the underlying purposes of the Bankruptcy Code.

Second, we find this case very similar to *Hays*. In *Hays*, the trustee sought to enforce a claim it inherited from the debtor in an adversarial proceeding in a district court. In that case, "we perceiv[ed] no adverse effect on the underlying purposes of the [Bankruptcy] Code from enforcing arbitration–certainly no adverse effect of sufficient magnitude to relieve a district court of its mandatory duty under the Arbitration Act . . .." *Hays*, 885 F.2d at 1161. Here, the debtor herself seeks to enforce a claim in an adversary proceeding in a bankruptcy court. If arbitration is enforced in this case, we likewise cannot perceive of a sufficiently

-27-

adverse effect on the underlying purposes of the Bankruptcy Code. We conclude that the Bankruptcy Court erred when it determined it had the discretion to deny enforcement of the arbitration provision in the contract between Mintze and AGF.

C.

Mintze also argues that AGF's claims are barred by the doctrine of judicial estoppel and this Court's rule against raising new issues on appeal. The doctrine of judicial estoppel prevents a party from asserting inconsistent claims in different legal proceedings. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 134.30, p. 134-62 (3d ed. 2000)). Judicial estoppel is an equitable doctrine, within the court's discretion. *See New Hampshire*, 532 U.S. at 750. *See also Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 121 (3d

-28-

Cir. 1992) (judicial estoppel is designed to protect the courts and not the litigants). The doctrine was designed to prevent parties from "playing fast and loose with the courts." *Scarno v. Cent. R.R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953).

Mintze claims that AGF should not be allowed to assert at the Bankruptcy Court hearing that the Bankruptcy Court had discretion and now to assert that the Bankruptcy Court did not have discretion. We choose, however, not to apply the doctrine of judicial estoppel here. As we have already stated, the stipulations of the parties were stipulations regarding questions of law. Because we are not bound by these stipulations, there is no need for us to consider judicial estoppel.

We also reject Mintze's argument that AGF's claim that the Bankruptcy Court lacks the discretion to deny arbitration should be dismissed because AGF is raising the

issue for the first time on appeal.  As a general rule, we do not address issues that are raised for the first time on appeal.  *See Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 251 (3d Cir. 1998).  When the resolution of an issue is of public importance, however, we may exercise our discretion and address issues raised for the first time on appeal.  *See The Council of Alternative Political Parties v. Hooks*, 179 F.3d 64, 69 (3d Cir. 1999); *Loretangeli v. Critelli*, 853 F.2d 186, 189 n.5 (3d Cir. 1988) (citing *Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 360-61 (11th Cir. 1984)).  Because of the strong federal policy in favor of arbitration and the importance of clarifying how it operates in the bankruptcy court system, we have determined that this case is an appropriate situation for us to exercise our discretion and to address the issue of a bankruptcy court's discretion to deny arbitration.

IV.

We conclude that the Bankruptcy Court lacked the authority and the discretion to deny enforcement of the arbitration provision in the contract between Mintze and AGF. The FAA mandates enforcement of arbitration when applicable unless Congressional intent to the contrary is established. Mintze has failed to demonstrate through statutory text, legislative history, or the underlying purposes of the Bankruptcy Code that Congress intended to preclude waiver of judicial remedies for her claims. Therefore, we will reverse the judgment of the District Court, affirming the Bankruptcy Court's denial of AGF's Motion to Compel Arbitration, and we will remand this case to the District Court for remand to the Bankruptcy Court with instructions to compel the parties to engage in arbitration in accordance with the terms of the arbitration agreement. Further, we note that

-31-

at oral argument AGF conceded that if we were to find in its favor, *all* of Mintze's claims, including her TILA, HOEPA and HIFA claims, were subject to arbitration. Therefore, we instruct the Bankruptcy Court on remand to vacate its September 24, 2004, Order insofar as it granted summary judgment to AGF on Mintze's TILA and HOPA claims and to confer with the parties concerning the status of the HIFA claim and whether it should be reinstated since it was withdrawn after the motion to arbitrate was filed.