*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| STATE OF ALASKA, DEPARTMENT OF REVENUE, | ) ) ) |
| | Supreme Court Nos. S-17883/17903 |
| Appellant and Cross-Appellee, | ) ) ) |
| | Superior Court No. 3AN-18-09155 CI |
| | O P I N I O N |
| v. | ) ) ) |
| | No. 7609 – August 5, 2022 |
| NABORS INTERNATIONAL FINANCE, INC. & SUBSIDIARIES, | ) ) ) |
| Appellee and Cross-Appellant. | ) ) ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Kevin M. Saxby, Judge.

Appearances: Katherine Demarest and Mary Hunter Gramling, Assistant Attorneys General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellant/Cross-Appellee. Jennifer M. Coughlin, Landye Bennett Blumstein, LLP, Anchorage, and Doug Sigel, Ryan Law Firm, PLLC, Austin, Texas, for Appellee/Cross-Appellant.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

WINFREE, Chief Justice.

# I.     INTRODUCTION

The Alaska Department of Revenue conducted a tax audit of a non-resident corporation doing business in Alaska.  The Department issued a deficiency assessment based in part on an Alaska tax statute requiring an income tax return to include certain foreign corporations affiliated with the taxpaying corporation.  The taxpayer exhausted its administrative remedies and then appealed to the superior court.

The taxpayer argued that the tax statute the Department applied is facially unconstitutional for three reasons:  (1) it violates the dormant Commerce Clause by discriminating against foreign commerce based on countries' corporate income tax rates; (2) it violates the Due Process Clause by being arbitrary and irrational; and (3) it violates the Due Process Clause by failing to provide notice of what affiliates a tax return must include, and therefore is void for vagueness.  The superior court rejected the first two arguments but ruled in the taxpayer's favor on the third argument.

The Department appeals, asserting that the superior court erred by concluding that the statute is void for vagueness in violation of the Due Process Clause. The taxpayer cross-appeals, asserting that the court erred by concluding that the statute does not violate the Commerce Clause and is not arbitrary.  For the reasons set forth below, we reverse the court's decision that the statute is facially unconstitutional on due process grounds and affirm the court's decision that it otherwise is facially constitutional.

# II.    FACTS AND PROCEEDINGS

Nabors International Finance, Inc. is "part of a corporate financial reporting group" and the lead nominal taxpayer in this case. Within the international conglomerate of Nabors corporations, it is "the parent entity of the U.S. group."  Nabors "provides oil field services throughout the world," including in Alaska.

Alaska law requires corporations doing business in Alaska to file corporate income tax returns and to pay tax on income "derived from sources within the state."[1] Under AS 43.20.145(a)(5) corporations doing business in Alaska must also report the income of certain affiliated corporations that are part of a "unitary business" with the filing corporation.[2] Specifically, AS 43.20.145(a)(5) requires including affiliated corporations incorporated in or doing business in low-tax countries. Nabors is a unitary business with foreign-affiliated corporations incorporated in or doing business in low-tax countries.

The Department audited Nabors for tax years 2007 through 2010, requesting information about Nabors's affiliated corporations not included in its Alaska tax return. Nabors identified its affiliates that were incorporated or did substantial business in low-tax jurisdictions. The Department then applied AS 43.20.145(a)(5) and included in Nabors's combined return the income from its affiliated corporations doing business in low-tax jurisdictions. This resulted in a deficiency assessment.

Nabors appealed and requested a formal hearing with the Office of Administrative Hearings.[3] The only issue on appeal was AS 43.20.145(a)(5)'s constitutionality. The parties participated in a two-day hearing before an Administrative Law Judge (ALJ), who heard testimony from each party's expert witness about state tax

---

[1]     AS 43.20.011(e), .030.

[2]     "A business is unitary if the entity or entities involved are owned, centrally managed, or controlled, directly or indirectly, under one common direction which can be formal or informal, direct or indirect, or if the operation of the portion of the business done within the state is dependent upon or contributes to the operation of the business outside the state." 15 Alaska Administrative Code (AAC) 20.310(a) (1982).

[3]     *See* AS 43.05.241 (providing aggrieved taxpayer "may file with the office of administrative hearings a notice of appeal for formal hearing"); 15 AAC 05.010 (providing for taxpayer appeal); 15 AAC 05.030 (providing formal hearing procedures).

policy, tax treatises, international taxation, discrimination against international commerce, and holding companies. Nabors's witness, describing Nabors's legal position, explained: "The statute at issue in this case has a fatal drafting error. Moreover, subsequent developments have rendered the statute obsolete, irrational, and arbitrary. Furthermore, the statute improperly interferes with foreign commerce. From a policy perspective, the statute fails to achieve its purpose." The ALJ issued a decision setting out findings of fact that were essentially undisputed between the parties, but without ruling on the ultimate legal question of the statute's constitutionality.[4]

Nabors appealed to the superior court, asserting that AS 43.20.145(a)(5) is facially unconstitutional for three reasons: (1) it violates the Commerce Clause through "unconstitutional location-based discrimination"; (2) it violates the Due Process Clause by being arbitrary and irrational; and (3) it violates the Due Process Clause because the lack of a conjunction between subparts (A) and (B) renders the statute void for vagueness. The court rejected Nabors's first two arguments but ruled in Nabors's favor on its third argument.

## III.    LEGAL BACKGROUND

Alaska taxes income attributable to a corporation's activities within the state.[5] Corporate taxpayers are required to "file a return using the water's edge combined reporting method,"[6] defined by AS 43.20.145(h)(4) as "a reporting method in which the only corporations besides the taxpayer that may be included in the return are the

---

[4]    *See Alaska Pub. Int. Rsch. Grp. v. State*, 167 P.3d 27, 36 (Alaska 2007) ("Administrative agencies do not have jurisdiction to decide issues of constitutional law.").

[5]    *See* AS 43.20.011(e).

[6]    AS 43.20.145(a)(5).

corporations listed in (a) of this section." A return "must include" the corporations listed in subsections (a)(1)-(5) if they are "part of a unitary business with the filing corporation."[7] The subsection at issue — (a)(5) — requires a return to include:

> (5) a corporation that is incorporated in or does business in a country that does not impose an income tax, or that imposes an income tax at a rate lower than 90 percent of the United States income tax rate on the income tax base of the corporation in the United States, if
>
>> (A) 50 percent or more of the sales, purchases, or payments of income or expenses, exclusive of payments for intangible property, of the corporation are made directly or indirectly to one or more members of a group of corporations filing under the water's edge combined reporting method;
>>
>> (B) the corporation does not conduct significant economic activity.[8]

Unitary foreign corporations thus must be included on a corporation's Alaska tax return only if they meet the conditions stated in AS 43.20.145(a)(5). After determining which corporations must be included on the combined return, another statute applies to calculate income attributable to Alaska.[9] The apportionment formula statute is not at issue in this case. Nabors challenges only AS 43.20.145(a)(5).

---

[7]     AS 43.20.145(a).

[8]     AS 43.20.145(a)(5).

[9]     *See* AS 43.20.142 ("A taxpayer who has income from business activity that is taxable both inside and outside the state or income from other sources both inside and outside the state shall allocate and apportion net income as provided in AS 43.19 (Multistate Tax Compact), or as provided by this chapter.").

## IV. STANDARD OF REVIEW

"The constitutionality of a statute and matters of constitutional or statutory interpretation are questions of law to which we apply our independent judgment, adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[10] "Statutes should be construed, wherever possible, so as to conform to the constitutions of the United States and Alaska."[11]

## V. DISCUSSION

### A. Alaska Statute 43.20.145(a)(5) Is Not Unconstitutionally Vague.

The superior court concluded that the missing conjunction between subparts (A) and (B) of AS 43.20.145(a)(5) rendered the statute void for vagueness in violation of the Due Process Clause. The court determined that it is unclear whether subparts (A) and (B) should be read conjunctively, with an implied "and" between them, or disjunctively, with an implied "or" between them. The court noted that a disjunctive "or" made the most sense but was "not the only logical reading." The court ultimately concluded: "[T]he Legislature's intent cannot be discerned. This is the essence of unconstitutional vagueness. . . . [O]ne of two potential interpretations must be applied. But if a taxpayer guesses wrong, or a new administration or auditor applies a different interpretation, significant adverse tax consequences may result."

---

[10] *Premera Blue Cross v. State, Dep't of Com., Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1115 (Alaska 2007).

[11] *Id.* (quoting *Alaska Transp. Comm'n v. AIRPAC, Inc.*, 685 P.2d 1248, 1253 (Alaska 1984)).

### 1. Subsection .145(a)(5) is a civil statute subject to a more lenient vagueness standard.

"The basic element of the doctrine of vagueness is a requirement of fair notice."[12]  "We have recognized, in accord with the United States Supreme Court, that a law 'which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.' "[13]  Two considerations are applicable when determining whether a law is void for vagueness.  We first "consider whether there is a history or a strong likelihood of arbitrary enforcement and uneven application," and we next "determine whether the [statute] provides adequate notice of prohibited conduct."[14]  "[T]he fact that people can, in good faith, litigate the meaning of a statute does not necessarily (or even usually) mean that the statute is so indefinite as to be unconstitutional."[15]  Rather, when determining whether an apparently ambiguous statute is unconstitutionally vague, we will "look beyond [the statute's] literal terms, asking

---

[12]  *VECO Int'l, Inc. v. Alaska Pub. Offs. Comm'n*, 753 P.2d 703, 714 (Alaska 1988).

[13]  *Halliburton Energy Servs. v. State, Dep't of Lab., Div. of Lab. Standards & Safety, Occupational Safety & Health Section*, 2 P.3d 41, 51 (Alaska 2000) (quoting *Lazy Mountain Club v. Matanuska-Susitna Borough Bd. of Adjustment & Appeals*, 904 P.2d 373, 382 (Alaska 1995)).

[14]  *Id.* at 50.  A third consideration — the "statute may not be so imprecisely drawn and overbroad that it 'chills' the exercise of [F]irst [A]mendment rights" — is not relevant to this decision.  *See State v. Rice*, 626 P.2d 104, 109 (Alaska 1981) (quoting *Holton v. State*, 602 P.2d 1228, 1235-36 (Alaska 1979)).

[15]  *Dykstra v. Mun. of Anchorage, Land Use Div.*, 83 P.3d 7, 9 (Alaska 2004) (alteration in original) (quoting *De Nardo v. State*, 819 P.2d 903, 908 (Alaska App. 1991)).

whether careful study of its history, relevant case law, and other statutory provisions can help establish a reasonably clear meaning."[16]

The Department asserts that because AS 43.20.145(a)(5) is a civil statute "govern[ing] economic concerns of regulated industries" we should give the legislature "more latitude for vagueness" and apply a more lenient standard. The Department points to *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, in which the United States Supreme Court noted: "The degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment."[17] The Court stated: "[E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action."[18] The Court reasoned that "the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process."[19] The Court also noted that it has "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe."[20]

The Department also points to our *Williams v. State, Department of Revenue* decision.[21] In that case a worker asserted that an Alaska Workers'

---

[16]    *Id.*

[17]    455 U.S. 489, 498 (1982).

[18]    *Id.* (footnote omitted).

[19]    *Id.*

[20]    *Id.* at 498-99.

[21]    895 P.2d 99 (Alaska 1995).

Compensation Act provision deprived her of procedural due process because it was unconstitutionally vague.[22] We stated that the void for vagueness factors — as relevant here, adequate notice of prohibited conduct and likelihood of arbitrary enforcement — had "little or nothing to do with" the worker's case.[23] We noted that "the statutes in question prohibit no conduct" and involve "neither prosecutorial action in a criminal context nor a civil enforcement action where a litigant may be at risk of losing an important right because the litigant's conduct did not meet a certain standard."[24] We explained: "Assuming that there is a constitutional bar of statutory vagueness in a case such as this . . . the bar is easily overcome. All that should be required is legislative language which is not so conflicting and confused that it cannot be given meaning in the adjudication process."[25]

Nabors responds that we should not apply a more lenient vagueness standard because AS 43.20.145(a)(5) "is a taxing statute subject to both civil and criminal enforcement" and that a corporation's officers and employees may be convicted of a class C felony for "willfully attempt[ing] to evade a tax imposed by [Title 43 of the Alaska Statutes]."[26] But this argument is unavailing. In *Lazy Mountain Land Club v. Matanuska-Susitna Borough Board of Adjustment & Appeals* we held that a local ordinance defining "junkyard/refuse area" for conditional land-use permits was an economic regulation subject to a less strict vagueness test in accordance with *Hoffman*

---

[22]    *Id.* at 105.

[23]    *Id.*

[24]    *Id.*

[25]    *Id.*

[26]    *See* AS 43.05.290(a).

*Estates*, despite the regulatory scheme providing criminal penalties for violations.[27] This was because "the primary enforcement mechanism" was an enforcement order rather than criminal penalties.[28] The primary enforcement mechanism once an erroneous tax return has been filed similarly is the Department's assessment and a notice and demand for payment of taxes owed, such as the one issued to Nabors in this case; an aggrieved taxpayer may request an informal conference and then administratively appeal the Department's assessment.[29] Criminal penalties are assessed only for *willful* evasion of taxes.[30] A corporation attempting in good faith to comply with AS 43.20.145(a)(5) thus may be required to pay taxes owed but would not be subject to criminal penalties. As the Department points out: "Failure to guess the correct interpretation of an ambiguous statute is not a crime; the crime is *intentional* tax evasion." (Emphasis in original.) For these reasons subsection .145(a)(5) is subject to the more lenient vagueness standard contemplated by *Hoffman Estates* and *Williams*, requiring only "legislative language which is not so conflicting and confused that it cannot be given meaning in the adjudication process."[31]

---

[27] 904 P.2d 373, 382-84 & n.61 (Alaska 1995).

[28] *Id.* at 384 n.61.

[29] *See* AS 43.05.245 (providing Department may "assess the license fees, tax, penalties, or interest and make a return from information that it obtains"); AS 43.05.240 (providing taxpayer may request informal conference); AS 43.05.241 (providing taxpayer may file appeal with office of administrative hearings following informal conference decision).

[30] *See* AS 43.05.290.

[31] *Williams v. State, Dep't of Revenue*, 895 P.2d 99, 105 (Alaska 1995); *see Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982).

**2. Subsection .145(a)(5) can be given meaning through the adjudication process.**

Because Nabors presented no evidence of arbitrary enforcement of subsection .145(a)(5), the only issue is whether the statute provides adequate notice of the required conduct.[32] Under the more lenient standard applied to civil, economic statutes such as this one, the statute provides adequate notice if it can be given meaning in the adjudication process.[33] Subsection .145(a)(5) can be given meaning in the adjudication process and thus is not unconstitutionally vague.

**a. Subsection .145(a)(5) can be interpreted despite the missing conjunction between subparts (A) and (B)**.

Although the superior court ultimately concluded that subsection .145(a)(5) cannot be interpreted, it first engaged in a statutory interpretation analysis and concluded that a disjunctive reading of the statute "makes the most sense." Looking at the statute's plain language the superior court reasoned:

> The plain meaning of 'significant' could be argued to render Subparts (A) and (B) as disjunctive, because it seems unlikely that a corporation would ever comply with both subparts simultaneously. That is, making 50 percent or more of sales, purchases or payments in a location where an entity does not conduct significant sales, purchases or payments seems improbable, unless the combined group does little or no business at all.

---

[32] *See State v. Rice*, 626 P.2d 104, 109 (Alaska 1981) (noting that consideration whether statute encouraged arbitrary enforcement was not applicable because we " 'will not invalidate a statute on these grounds unless there is some history of arbitrary or selective enforcement' and there was no showing of such a history in this case" and concluding "that a claim of void for vagueness must rest" on adequate notice (footnote omitted) (quoting *Holton v. State*, 602 P.2d 1228, 1237 (Alaska 1979))).

[33] *Williams*, 895 P.2d at 105.

The court noted that a disjunctive interpretation was further supported by the language used in subsection .145(a)(5) being "nearly identical" to language in a Worldwide Unitary Taxation Working Group report.[34] The report identifies "certain tax haven corporations presumed to be part of the unitary business," separating subparts (A) and (B) with "or." The Department's expert testified about why "or" was used in the Working Group report. He stated that (A) and (B) represented distinct situations; subpart (A) described "the types of things you would look at to see whether something is part of the unitary business" and attempted to capture "operational connections" that might "give rise to the opportunity to shift income," and subpart (B) dealt with holding companies.

The ALJ also noted in his decision: "Certainly, [AS 43.20.145(a)(5)] is capable of construction through the administrative process." The ALJ acknowledged that he had not been asked to interpret the statute but that "if [he] were asked to construe the statute as having an implied 'and' or an implied 'or,' [he] certainly could do so." The ALJ further found that the "record contains considerable information that would help guide a decision on this issue."

Both the superior court's analysis and the ALJ's conclusion that subsection .145(a)(5) is capable of interpretation through the administrative process support our conclusion that subsection .145(a)(5) provides adequate notice of what is

---

[34] The Worldwide Unitary Taxation Working Group was convened in the 1980s by U.S. Treasury Secretary Donald Regan; the Working Group's goal was responding to foreign nations' concerns about states using worldwide combined reporting for corporate income tax returns. The Working Group's 1984 report identified options for "limiting the worldwide unitary method to the 'water's edge.'"

required.[35]  The plain language, the Working Group report, and the statute's purpose of preventing tax avoidance all aid in providing a reasonably clear meaning.[36]

Nabors asserts that even if subsection .145(a)(5) is analyzed under a more lenient void for vagueness standard, it still is unconstitutional because it fails to provide taxpayers fair notice.  Nabors emphasizes the superior court's determination that "the Legislature's intent cannot be discerned."  Nabors argues that the Working Group report is not referenced in the statute's legislative history and that a tax lawyer doing research for a client would not find the report.  The Department persuasively undercuts this argument by noting that the attorneys working on this case found the report and that it has been available to decision-makers throughout Nabors's appeal.  It also appears that the statute's legislative history reflects discussion about the Working Group report.[37]  But even if Nabors were correct that reference to the Working Group Report cannot be found in the legislative history, the statute still is capable of interpretation by looking at its plain language and purpose.[38]

Nabors stresses that "[c]ourts cannot use legislative history to change the language of statutes to correct alleged mistakes in drafting."  Although Nabors is correct that we do "not rewrite statutes even when the legislative history suggests that the

---

[35]     *See Williams*, 895 P.2d at 105.

[36]     *See Dykstra v. Mun. of Anchorage, Land Use Div.*, 83 P.3d 7, 9 (Alaska 2004) ("[T]o determine whether an apparently confusing statute is impermissibly vague, we . . . ask[] whether careful study of its history, relevant case law, and other statutory provisions can help establish a reasonably clear meaning.").

[37]     *See, e.g.*, Policy Statement Attachment to Letter to Rep. Finkelstein (Feb. 20, 1991), House Fin. Comm., House Bill 12, 17th Leg., 1st Sess. (1991).

[38]     *See City of Valdez v. State*, 372 P.3d 240, 249 (Alaska 2016) (observing that we use "three metrics for statutory interpretation:  text, legislative history, and purpose").

legislature may have made a mistake in drafting,"[39] a decision-maker asked to interpret subsection .145(a)(5) need not rewrite the statute. Subparts (A) and (B) must be read either conjunctively or disjunctively, and a reviewing court could consider the statute's language, legislative history, and purpose to determine the proper interpretation. Nabors's argument that subsection .145(a)(5) is incapable of interpretation through the administrative process because "choosing one of two equally plausible interpretations is stepping over the line of interpretation and engaging in legislation" similarly fails.[40] A decision maker interpreting the statute in light of its language, legislative intent, and purpose would not be choosing between equally plausible alternatives but rather interpreting its reasonably clear meaning.

Nabors's reliance on *Lamie v. United States Trustee*[41] also is misplaced. In *Lamie* the United States Supreme Court considered whether a statute could be interpreted based on its plain language or whether a missing conjunction rendered it ambiguous and required that the Court consult legislative history to determine its meaning.[42] The Court determined that, despite the missing conjunction, the statute was

---

[39] *State, Div. of Workers' Comp. v. Titan Enters.*, 338 P.3d 316, 321 (Alaska 2014).

[40] *See Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 517 (Alaska 1998) ("Neither literal clarity of statutory language nor the desire to avoid implied repeal can justify construing a statute in a manner that is plainly unreasonable in light of its intent, 'because giving the statute an unintended meaning "would be stepping over the line of interpretation and engaging in legislation." ' " (quoting *State v. Alex*, 646 P.2d 203, 207-08 (Alaska 1982))).

[41] 540 U.S. 526 (2004).

[42] *Id.* at 533-35.

not ambiguous.[43]  Nabors nonetheless relies on the Court's comment that "[t]his is not a case where a 'not' is missing or where an 'or' inadvertently substitutes for an 'and.' "[44] Nabors asserts that the Court implicitly "recognized that there may be situations where the absence of an 'and' or an 'or' renders a statute ambiguous or inoperable due to missing language" and that this case is such a situation.

The Department correctly responds that "[n]othing in the case implies that, had the Court found ambiguity, it would have struck down the statute on vagueness grounds." *Lamie* involved a different statute, legal question, and analysis than this case and is irrelevant to whether subsection .145(a)(5) is void for vagueness.[45]

We emphasize that "[s]tatutes should be construed, wherever possible, so as to conform to the constitutions of the United States and Alaska."[46]  Because we conclude that subsection .145(a)(5) can be interpreted through the adjudication process, the missing conjunction between subparts (A) and (B) does not render the statute void for vagueness.[47]

### b.      Subpart (B) can be interpreted.

Nabors contends that subpart (B) also is void for vagueness because the phrase "does not conduct significant economic activity" is undefined and fails to provide

---

[43]      *Id.* at 534-35.

[44]      *Id.* at 535.

[45]      *See id.* at 533-35.

[46]      *Premera Blue Cross v. State, Dep't of Com., Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1115 (Alaska 2007) (quoting *Alaska Transp. Comm'n v. AIRPAC, Inc.*, 685 P.2d 1248, 1253 (Alaska 1984)).

[47]      The Department also asks us to decide whether subsection .145(a)(5)'s subparts (A) and (B) should be interpreted conjunctively or disjunctively.  But that issue is not before us, and we decline to rule on it.

taxpayers fair notice of which corporations must be included in the return. Under AS 43.20.145(a)(5)(B) a corporate tax return should include a unitary corporation if it is incorporated in a low-tax jurisdiction and "the corporation does not conduct significant economic activity." The Alaska Administrative Code defines "does not conduct significant economic activity" to mean "the corporation's business is substantially limited to transactions that permit favorable tax treatment because of the corporation's presence in the country and that would not otherwise be available to other members of the water's edge combined group."[48] Nabors asserts that this definition is meaningless.

Nabors also contends that the statute is not capable of interpretation because, as interpreted by the superior court, the definition is "standardless." Using ordinary definitions, the superior court interpreted the statute to mean that "a corporation that does not conduct significant economic activity would not have a noticeably or measurably large amount" of "activities relating to making, providing, purchasing, or selling goods or services, or any activities involving money or the exchange of products or services." (Emphasis omitted.)

The Department responds that corporations subject to this statute are large, multinational businesses supported by lawyers, accountants, and tax experts who "have the ability to clarify the meaning of the regulation by [their] own inquiry, or by resort to an administrative process."[49] Corporate taxpayers have fair notice that foreign unitary corporations located in low-tax jurisdictions must be included in an Alaska tax return if the foreign corporations do not conduct a large amount of business activities or if their activities are limited to transactions permitting favorable tax treatment. If a taxpayer is

---

[48] 15 AAC 20.900(b)(1).

[49] *See Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982).

unsure which affiliates to include, it can request guidance from the Department. Nabors's argument that subsection .145(a)(5)(B) is void for vagueness fails.

**B.      Alaska Statute 43.20.145(a)(5) Does Not Violate The Commerce Clause.**

Nabors asserts in its cross-appeal that the superior court erred by concluding AS 43.20.145(a)(5) does not violate the United States Constitution's Commerce Clause, which gives Congress the power to regulate interstate and foreign commerce.[50] The Commerce Clause does not explicitly limit states' power to regulate commerce, but the United States Supreme Court has long recognized the clause as "a self-executing limitation on the power of the States to enact laws imposing substantial burdens on [interstate and foreign] commerce."[51] "This 'negative' aspect of the Commerce Clause prohibits economic protectionism — that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors."[52] "Thus, state statutes that clearly discriminate against interstate commerce are routinely struck down, unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism."[53]

The Court in *Complete Auto Transit, Inc. v. Brady* articulated a four-part test for determining whether state taxation of interstate commerce violates the Commerce

---

[50]      *See* U.S. Const. art. I, § 8, cl. 3 ("The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes.").

[51]      *S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87 (1984).

[52]      *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273 (1988).

[53]      *Id.* at 274 (citations omitted).

Clause.[54]  A state tax will be upheld if it:  (1) "is applied to an activity with a substantial nexus with the taxing State"; (2) "is fairly apportioned"; (3) "does not discriminate against interstate commerce"; and (4) "is fairly related to the services provided by the State."[55]  And the Court addressed state taxation of foreign commerce in *Japan Line, Ltd. v. Los Angeles County*.[56]  The Court held that, after satisfying the *Complete Auto* test, a state tax on foreign commerce must survive two additional inquiries which are not relevant in this case.[57]

Nabors asserts only that subsection .145(a)(5) discriminates against foreign commerce and thus under the *Complete Auto* test fails to satisfy the third prong.[58]  When evaluating a discrimination claim against interstate or foreign commerce, the Court has "adopted what amounts to a two-tiered approach."[59]  The first question is whether a

---

[54]     430 U.S. 274, 279 (1977).

[55]     *Id.*; *see also Alyeska Pipeline Serv. Co. v. Williams*, 687 P.2d 323, 329-30 (Alaska 1984) (applying *Complete Auto* test to "determin[e] the validity of a tax under the commerce clause of the U.S. Constitution").

[56]     441 U.S. 434, 446-51 (1979).

[57]     *Id.* at 451 (quoting *Michelin Tire Corp. v. Wages*, 423 U.S. 276, 285 (1976)).

[58]     Although the *Complete Auto* test's third prong refers to discrimination against "interstate" commerce, *see Complete Auto Transit*, 430 U.S. at 279, the Court has applied the test to evaluate claims of discrimination against foreign commerce. *See, e.g.*, *Barclays Bank PLC v. Franchise Tax Bd. of California*, 512 U.S. 298, 312-14 (1994) (considering whether state's worldwide combined reporting scheme "violates the antidiscrimination component of the *Complete Auto* test" by discriminating against foreign-owned enterprises).

[59]     *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79 (1986).

statute is facially discriminatory, in which case it is "virtually *per se* invalid."[60] A statute is facially discriminatory if it "directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests."[61] If subsection .145(a)(5) is not facially discriminatory and "its effects on interstate commerce are only incidental,"[62] then the second question becomes whether it survives the balancing test articulated in *Pike v. Bruce Church, Inc.*;[63] under *Pike* the statute "will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits."[64]

### 1. Alaska Statute 43.20.145(a)(5) is not facially discriminatory.

Nabors contends that "AS 43.20.145(a)(5) is facially discriminatory, because the explicit geographic references that appear on the face of the statute divide the world into two categories: (1) those with corporate income tax rates lower than 90% of the U.S. rate, i.e., 'tax havens'; and (2) 'non-tax havens.' " Nabors's primary contention is that the superior court erred by considering the discriminatory effect and burdens imposed in evaluating whether the statute is facially discriminatory.

---

[60]     *Id.* at 579.

[61]     *Id.*

[62]     *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

[63]     *Brown-Forman Distillers Corp.*, 476 U.S. at 578-79 (explaining "two-tiered approach").

[64]     397 U.S. at 142.

**a.** **The superior court did not err by analyzing the effect of subsection .145(a)(5) to determine whether it is facially discriminatory.**

In analyzing whether subsection .145(a)(5) is facially discriminatory, the superior court relied on *Brown-Forman Distillers Corp. v. New York State Liquor Authority*, in which the United States Supreme Court noted:

> [N]o clear line separat[es] the category of state regulation that is virtually per se invalid under the Commerce Clause[] and the category subject to the *Pike v. Bruce Church* balancing approach. In either situation the critical consideration is the overall effect of the statute on both local and interstate activity.[65]

The superior court stated: "[A]pplying this reasoning to a Foreign Commerce Clause challenge, the threshold question is whether Nabors has sufficiently asserted that the overall effect of AS 43.20.145(a)(5) results in discrimination against foreign commerce to invoke a strict scrutiny analysis . . . ."

The superior court examined the burden the statute placed on similarly situated taxpayers and found that the only burden is filing an Alaska tax return; the court noted that this does not necessarily lead to a corporation paying more taxes because "each corporation's tax situation is unique" and "[f]iling an Alaska tax return . . . should typically have a neutral effect on a corporation that does not routinely export Alaska value to a foreign low-tax jurisdiction." The court also found important that whether a company is incorporated in a low-tax jurisdiction is "only one aspect of the overall corrective measures . . . designed to identify Alaska-based revenues that would otherwise go untaxed"; a foreign corporation must file a return only if it meets subsection .145(a)(5)'s requirements. The court concluded that the minimal burden

---

[65] 476 U.S. at 579.

imposed does not rise to the level of discrimination, that the statute does not promote economic protectionism, and that the statute is facially neutral.

Nabors asserts that the superior court misinterpreted *Brown-Forman* as requiring analysis of subsection .145(a)(5)'s discriminatory effect. Nabors contends that subsection .145(a)(5) "divide[s] the world into two categories" based on corporate income tax rates, rendering it facially discriminatory and subject to strict scrutiny. Nabors emphasizes another statement in *Brown-Forman*: "When a state statute directly regulates or discriminates against interstate commerce, *or* when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry."[66] According to Nabors, the superior court "confuse[d] a sufficient condition for a necessary condition[;] . . . . [d]emonstrating that AS 43.20.145(a)(5) has a discriminatory effect would be sufficient for invoking strict scrutiny, but it is not necessary." Nabors asserts that a discriminatory effect is not required if a statute "directly regulates or discriminates against interstate commerce"[67] and that subsection .145(a)(5)'s "explicit geographic references" thus are facially discriminatory.

But Nabors's interpretation ignores *Brown-Forman*'s statements that "there is no clear line separating" state regulations subject to strict scrutiny from those subject to the *Pike* balancing test and that "[i]n either situation the critical consideration is the overall effect of the statute on both local and interstate activity."[68] And the analysis in *Brown-Forman* contradicts Nabors's interpretation. In *Brown-Forman* the appellant contended that a state statute fell "within that category of direct regulations of interstate

---

[66]     *Id.* (emphasis added).

[67]     *Id.*

[68]     *Id.*

commerce that the Commerce Clause wholly forbids."[69] The Court analyzed how the statute at issue worked in practice and considered whether the statute's effect was discriminatory against interstate commerce; the Court ultimately held that the statute "on its face" violated the Commerce Clause.[70] *Brown-Forman*'s analysis of the statute's effect to determine whether it constituted direct regulation of interstate commerce is at odds with Nabors's assertion that subsection .145(a)(5)'s "explicit geographic" line-drawing alone constitutes facial discrimination violating the Commerce Clause, regardless of whether the statute's effect is to discriminate against foreign commerce.

Considering a state statute's discriminatory effect when determining whether it is facially discriminatory against interstate commerce also is consistent with the Court's Commerce Clause analysis in other cases.[71] In *Kraft General Foods, Inc. v. Iowa Department of Revenue & Finance*, for example, the principal dispute concerned "whether, on its face, the Iowa statute discriminates against foreign commerce."[72] It was "indisputable that the Iowa statute treat[ed] dividends received from foreign subsidiaries less favorably than dividends received from domestic subsidiaries" because the statute

---

[69]     *Id.*

[70]     *Id.* at 580-85 ("If appellant has correctly characterized the effect of the . . . law, that law violates the Commerce Clause. . . . Our inquiry, then, must center on whether . . . [the] law regulates commerce in other States."); *see also id.* at 583 (considering "practical effects" of law at issue).

[71]     Nabors points to *Wyoming v. Oklahoma*, in which the Court stated: "The volume of commerce affected measures only the extent of the discrimination; it is of no relevance to the determination whether a State has discriminated against interstate commerce." 502 U.S. 437, 455 (1992) (emphasis omitted). Subsection .145(a)(5) is not so clearly discriminatory in effect as the statute at issue in *Wyoming*. *See id.* The issue here is not the discrimination's extent, but whether subsection .145(a)(5) has a discriminatory effect at all.

[72]     505 U.S. 71, 75 (1992).

included "the former, but not the latter, in the calculation of taxable income," but Iowa argued that the differential treatment did not constitute prohibited discrimination against foreign commerce.[73] The Court did not immediately strike down the statute for that reason alone; instead the Court analyzed whether the *effect* of the statute was discriminatory against foreign commerce.[74]

### b. Subsection .145(a)(5) has no discriminatory effect on foreign commerce.

We conclude that subsection .145(a)(5) does not discriminate against foreign commerce. As the superior court noted, the only potential burden placed on companies incorporated in low-tax or no-tax jurisdictions is having to file an Alaska tax return if they meet AS 43.20.145(a)(5)'s additional requirements.

The superior court found that "Nabors did not demonstrate that the administrative burden of filing an Alaska return was significant" and that the burden of filing a return does not rise to the level of discrimination. The superior court pointed to the United States Supreme Court's consideration of a dormant Commerce Clause challenge to California's worldwide combined reporting scheme for corporate income tax in *Barclays Bank PLC v. Franchise Tax Board of California*.[75] In that case the petitioner asserted that requiring foreign-owned enterprises to file a California tax return was a "prohibitive administrative burden" constituting discrimination against foreign commerce.[76] The Court acknowledged that "[c]ompliance burdens, if disproportionately imposed on out-of-jurisdiction enterprises, may indeed be inconsonant with the

---

[73]  *Id.*

[74]  *Id.* at 75-82.

[75]  512 U.S. 298, 312-14 (1994).

[76]  *Id.* at 313.

Commerce Clause."[77]  But the Court determined that the petitioner had failed to demonstrate significant compliance burdens and accordingly held that the law did not discriminate against foreign commerce.[78]  Nabors does not argue that filing a return is a significant administrative burden.

And, as Nabors's expert testified, merely filing a return does not mean a company will pay more tax; Alaskan tax liability depends on applying the unchallenged apportionment formula to the taxpayer's specific circumstances.  "[T]he Commerce Clause is not violated when the differential tax treatment of two categories of companies 'results solely from differences between the nature of their businesses, not from the location of their activities.' "[79]  A company's location is one consideration when determining whether a corporation must file a return under subsection .145(a)(5), but, as Nabors's expert testified, any differential tax treatment results from the nature of the taxpayer's business rather than its country of incorporation.

Because filing a return is not itself a significant burden constituting discrimination against foreign commerce and because a company's tax liability resulting from its return depends on applying the apportionment formula, subsection .145(a)(5) is not facially discriminatory.

---

[77]  *Id.*

[78]  *Id.* at 313-14; *cf. Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012) ("Given the purposes of the dormant Commerce Clause, it is not surprising that a state regulation does not become vulnerable to invalidation under the dormant Commerce Clause merely because it affects interstate commerce.  A critical requirement for proving a violation of the dormant Commerce Clause is that there must be a substantial burden on interstate commerce." (emphasis and citations omitted)).

[79]  *Kraft*, 505 U.S. at 78 (quoting *Amerada Hess Corp. v. Dir., Div. of Tax'n, N.J. Dep't of the Treasury*, 490 U.S. 66, 78 (1989)).

### c. The *Kraft* "most similarly situated" analysis does not render subsection .145(a)(5) facially discriminatory.

Nabors next argues that the superior court misapplied the "most similarly situated" test articulated by the United States Supreme Court in *Kraft*[80] and that, if the test were properly applied, subsection .145(a)(5) would be facially discriminatory. In *Kraft* the Court explained: "In considering claims of discriminatory taxation under the Commerce Clause . . . it is necessary to compare the taxpayers who are 'most similarly situated.' "[81] The Court compared similarly situated corporations that did not do business in Iowa and determined the statute "impose[d] a burden on foreign subsidiaries that it [did] not impose on domestic subsidiaries."[82]

Nabors asserts that the taxpayers most similarly situated are two hypothetical companies, one incorporated in a high-tax jurisdiction not falling under subsection .145(a)(5) and the other incorporated in a low-tax jurisdiction falling under subsection .145(a)(5). Nabors provides an example of the analysis:

> Assume Company A and Company E are both engaged in excessive self-dealing [under AS 43.20.145(a)(5)(A)] . . . . If Company E is incorporated in a jurisdiction with a tax rate greater than 90% of the United States income tax rate, Company E will not be subject to AS 43.20.145(a)(5). Conversely, if Company A is incorporated in a jurisdiction with a tax rate lower than 90% of the United States income tax rate and engages in excessive self-dealing . . . then Company A is subject to AS 43.20.145(a)(5).

---

[80]   *Id.* at 80 n.23.

[81]   *Id.* (quoting *Halliburton Oil Well Cementing Co. v. Reily*, 373 U.S. 64, 71 (1963)).

[82]   *Id.* at 80.

But this does not necessarily mean subsection .145(a)(5) is facially discriminatory because, as discussed above, the statute's effect is not discriminatory against foreign commerce. Because the burden of filing a return does not constitute a discriminatory effect and because filing a return under subsection .145(a)(5) does not necessarily correlate with paying higher taxes, then, even under *Kraft*'s analysis of the taxpayer "most similarly situated," subsection .145(a)(5) is not facially discriminatory.

### d. Subsection .145(a)(5) does not violate *Boston Stock Exchange v. State Tax Commission* by causing corporations to make non-tax-neutral decisions.

Nabors also relies on *Boston Stock Exchange v. State Tax Commission*[83] to support its assertion that subsection .145(a)(5) is facially discriminatory. In that case the United States Supreme Court reviewed a Commerce Clause challenge to an amendment to New York's transfer tax on securities transactions and held the amendment was unconstitutional.[84] The Court considered the amendment's effect on interstate commerce; in relevant part, non-residents selling securities in New York received a tax reduction, but non-residents selling securities outside of New York did not receive the reduction.[85] The Court determined that, under the amendment, the choice of which securities exchange to use — one in New York or one outside New York — would not be "made solely on the basis of nontax criteria."[86] "The obvious effect of the tax [was] to extend a financial advantage to sales on the New York exchanges at the expense of the

---

[83]   429 U.S. 318 (1977).

[84]   *Id.* at 319-21, 332-36.

[85]   *Id.* at 324.

[86]   *Id.* at 331.

regional exchanges."[87]  The Court contrasted New York's amendment with state use taxes in other cases in which the Court had upheld use taxes against Commerce Clause challenges.[88]  The critical consideration in the use tax cases was that "an individual faced with the choice of an in-state or out-of-state purchase could make that choice without regard to the tax consequences."[89]

The Department persuasively argues that the Court's reasoning in the use tax cases "is analogous to Alaska's rule capturing taxable value transferred overseas." The Department points out that in the use tax cases, states were permitted to treat other states's goods differently based on the tax rate charged to protect the in-state tax base; people were free to cross state lines to shop, but they could not avoid their states' sales taxes by doing so.  And it argues that likewise "corporations remain free to locate themselves and structure transactions as they please, but they cannot avoid Alaska tax by doing so."

---

[87]    *Id.*

[88]    *Id.* at 331-32.  The Court described one such state use tax:

Washington imposed a 2% sales tax on all goods sold at retail in the State.  Since the sales tax would have the effect of encouraging residents to purchase at out-of-state stores, Washington also imposed a 2% "compensating tax" on the use of goods within the State.  The use tax did not apply, however, when the article had already been subjected to a tax equal to or greater than 2%.  The effect of this constitutional tax system was nondiscriminatory treatment of in-state and out-of-state purchases . . . .

*Id.* at 331.

[89]    *Id.* at 332.

Nabors reiterates that subsection .145(a)(5) discriminates based on foreign countries' tax rates, but it fails to explain how the statute would cause corporations to choose where to incorporate based on non-tax-neutral criteria. The burden of filing a return does not render subsection .145(a)(5) discriminatory, and filing a return does not necessarily equate to paying more taxes because each corporation's tax situation is unique. As the superior court noted, "[f]iling an Alaska tax return . . . should typically have a neutral effect on a corporation that does not routinely export Alaska value to a foreign low-tax jurisdiction" and the "minimal pressure on a corporation to relocate or to do business in a state or country other than Alaska . . . ., to the extent that there is any, is caused by making tax avoidance more difficult." Thus subsection .145(a)(5) does not violate the principle discussed in *Boston Stock Exchange* of promoting tax-neutral decisions.

### e. Subsection .145(a)(5) does not have an economic protectionist purpose.

The Department contends that economic protectionism is required to find a state statute discriminates against foreign commerce and, because no such protectionism underlies subsection .145(a)(5), that there is no cognizable claim of discrimination under the Commerce Clause. The Department asserts that the United States Supreme Court "has never held that treating corporations incorporated in different countries differently for reasons having nothing to do with protectionism is 'discrimination' " under the Commerce Clause.

Much of the Court's Commerce Clause jurisprudence seems to support the Department's assertion that state statutes violate the dormant Commerce Clause only if they include an element of economic protectionism. The Court has noted: "The modern law of what has come to be called the dormant Commerce Clause is driven by concern about 'economic protectionism — that is, regulatory measures designed to benefit in-

state economic interests by burdening out-of-state competitors.' "[90]  The Court observed that the "point" of the dormant Commerce Clause is to "effectuat[e] the Framers' purpose to 'prevent a State from retreating into . . . economic isolation.' "[91]  The Court has also held that, in the dormant Commerce Clause context, " 'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."[92]  And the Court has explained that "state statutes that clearly discriminate against interstate commerce are routinely struck down, unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism."[93]  The Court has further expressed that an apparently discriminatory state statute may on occasion be found valid because "what may appear to be a 'discriminatory' provision in the constitutionally prohibited sense — that is, a protectionist enactment — may on closer analysis not be so."[94]

*Kraft*[95] and *Boston Stock Exchange*[96] — two cases Nabors heavily relies on — also involved statutes with economic protectionist elements.  In *Kraft* the Court held

---

[90]  *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-38 (2008) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273-74 (1988)).

[91]  *Id.* (first alteration in original) (quoting *Fulton Corp. v. Faulkner*, 516 U.S. 325, 330 (1996)).

[92]  *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007) (quoting *Or. Waste Sys., Inc. v. Dep't of Env't Quality of Or.*, 511 U.S. 93, 99 (1994)).

[93]  *New Energy Co. of Ind.*, 486 U.S. at 274 (citations omitted).

[94]  *Id.* at 278.

[95]  505 U.S. 71 (1992).

[96]  429 U.S. 318 (1977).

that even though a state tax statute did not treat in-state subsidiaries more favorably than interstate or foreign subsidiaries, the statute violated the Commerce Clause because it "impose[d] a burden on foreign subsidiaries that it [did] not impose on domestic subsidiaries."[97] The Court held: "[A] State's preference for domestic commerce over foreign commerce is inconsistent with the Commerce Clause even if the State's own economy is not a direct beneficiary of the discrimination."[98] In *Boston Stock Exchange* the Court held that a state tax scheme that "impose[d] a greater tax liability on out-of-state sales than on in-state sales" violated the Commerce Clause.[99] The Court decided it made no difference that the discrimination was "in favor of nonresident, in-state sales which may also be considered as interstate commerce" and that it is "constitutionally impermissible" for a state to "tax in a manner that discriminates between two types of interstate transactions in order to favor local commercial interests over out-of-state businesses."[100]

We conclude that subsection .145(a)(5)'s purpose of protecting Alaska's tax base is not the sort of prohibited economic protectionism contemplated by the Court's Commerce Clause jurisprudence. Subsection .145(a)(5) does not differentiate between foreign nations to favor Alaskan interests or domestic interests generally over foreign interests, which likely would constitute economic protectionism.[101] The superior court correctly recognized that "Alaskan corporations will pay the same tax they would have

---

[97]     505 U.S. at 80.

[98]     *Id.* at 79.

[99]     429 U.S. at 332.

[100]    *Id.* at 334-35.

[101]    *See Kraft*, 505 U.S. at 79.

paid had the tax avoidance activities not occurred" and that subsection .145(a)(5) is "not designed to benefit in-state economic interests by burdening out-of-state competitors." Alaska's interest in protecting its tax base does not render the statute protectionist.

### 2. Under the *Pike* balancing test AS 43.20.145(a)(5) does not violate the Commerce Clause.

Because subsection .145(a)(5) is not facially discriminatory, we analyze it under the *Pike* balancing test.[102]  Under *Pike* subsection .145(a)(5) "will be upheld unless

---

[102]    *See Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79 (1986).  We note that the Department questions whether *Pike* balancing is appropriate in this case and asserts we should uphold subsection .145(a)(5) because it is not facially discriminatory without analyzing it under *Pike*.  The Department cites the United States Supreme Court's *Department of Revenue of Kentucky v. Davis* decision declining to subject a Kentucky taxation scheme to *Pike* balancing because "the current record and scholarly material convince[d] [the Court] that the Judicial Branch is not institutionally suited to draw reliable conclusions of the kind that would be necessary for the [plaintiffs] to satisfy a *Pike* burden in this particular case."  553 U.S. 328, 353 (2008). The Department also notes that in *Barclays Bank* the Court did not conduct *Pike* balancing when determining that California's worldwide combined reporting scheme did not discriminate against foreign commerce.  512 U.S. 298, 312-14 (1994).

*Pike* nonetheless appears to be the standard, as the Court has not overruled it or held that it generally is inappropriate in cases like this one.  *But cf. Dep't of Revenue of Ky.*, 553 U.S. at 360 (Scalia, J., concurring in part) ("I would abandon the *Pike*-balancing enterprise altogether and leave these quintessentially legislative judgments with the branch to which the Constitution assigns them."); Mark L. Mosley, *The Path out of the Quagmire:  A Better Standard for Assessing State and Local Taxes Under the Negative Commerce Clause*, 58 TAX L. 729, 738-39 (2005) (opining that *Pike* balancing may be appropriate for some Commerce Clause analyses but that it is "wholly inappropriate for taxation cases").

the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits."[103] State laws frequently survive this deferential balancing test.[104]

> The superior court determined:

> The facially neutral language in AS 43.20.145(a)(5) survives a *Pike* balancing test analysis because it regulates even-handedly to effectuate the legitimate public interest of preventing the export of Alaska value to a "tax haven" country, and the burden imposed on foreign commerce is minimal in comparison to the recognized local benefits . . . .

Nabors does not argue that Alaska's interest is not legitimate or that the statute imposes a burden beyond the filing requirement. Nabors asserts only that subsection .145(a)(5) fails to accomplish Alaska's purpose of preventing the exportation of Alaska value and that, as a result, any burden imposed by the statute "necessarily outweighs" the benefit.

Nabors first contends that the superior court erred by "ignor[ing] the ALJ's factual finding that subparagraph (A) is not likely to accomplish Alaska's stated interest." The ALJ based this finding primarily on the Department's expert's testimony. The Department's expert "indicated that the level of internal transactions required by subparagraph .145(a)(5)(A) would generally capture all members of the unitary business" and agreed that "taxation under subparagraph .145(a)(5)(A) is, effectively, 'very close to worldwide combined reporting.' " The ALJ concluded that Nabors had demonstrated that the overall effect of subsection .145(a)(5)(A) "is to distinguish among corporations based on place of business in a manner that is not likely to accomplish Alaska's goal."

Even if taxation under AS 43.20.145(a)(5)(A) is very close to worldwide reporting, it does not follow that the statute fails the *Pike* balancing analysis. The

---

[103] 397 U.S. 137, 142 (1970).

[104] *Dep't of Revenue of Ky.*, 553 U.S. at 339 (collecting cases).

superior court found "reasonable the [legislature's] conclusion that a corporation engaging in self-dealing that equates to more than 50 percent of its business transactions, along with being located in a low-tax or no-tax jurisdiction, increases the probability that the corporation is attempting to export Alaska value." The court acknowledged that "[s]tanding alone, [subsection .145(a)(5)(A)] may capture most unitary business members" but determined that some over-inclusiveness is tolerable and the statute is not irrational or meaningless. The legislature balanced competing policy goals of attracting foreign investment through less burdensome filing requirements against preventing tax avoidance. Nabors does not explain how this incidental over-inclusiveness causes the statute to fail the deferential *Pike* balancing test.

Nabors also contends that if subsection .145(a)(5)'s purpose is protecting Alaska's tax base and it subjects multi-jurisdictional corporations to differing tax liabilities, "then that would mean Alaska's alleged interest is not always advanced — *e.g.*, the form of tax revenue or protecting Alaska's tax base only occurs sometimes, but the burden to file a return is always imposed." Nabors asserts that this means the statute's burden outweighs the benefit. Nabors is incorrect. As previously discussed, tax liability will depend on a company's unique circumstances and the application of the apportionment formula. A company's tax liability under the statute would not increase unless the company were in fact exporting Alaska value; the benefit of the statute is the State's ability to prevent that export by requiring affiliates with indicators of potential tax avoidance to be included on the taxpayer's Alaska tax return.

Under *Pike* Nabors was required to establish that the burden on foreign commerce is "clearly excessive" compared to the statute's local benefits.[105] Nabors did not meet that burden.

---

[105]     *See* 397 U.S. at 142.

**C.     Alaska Statute 43.20.145(a)(5) Does Not Violate Due Process Because It Is Not Arbitrary And Irrational.**

Nabors finally asserts that subsection .145(a)(5) is arbitrary and irrational in violation of the Due Process Clause. We have explained: "Substantive due process is denied when a legislative enactment has no reasonable relationship to a legitimate governmental purpose."[106] It is not the role of courts to decide whether a statute is wise; "the choice between competing notions of public policy is to be made by elected representatives of the people."[107] Substantive due process guarantees only that a legislative enactment "is not arbitrary but instead based upon some rational policy."[108] The legislature's actions are presumed to be proper, and a party seeking to prove a substantive due process violation must show "that no rational basis for the challenged legislation exists."[109] "This burden is a heavy one, for if any conceivable legitimate public policy for the enactment is apparent on its face or is offered by those defending the enactment, the opponents of the measure must disprove the factual basis for such a justification."[110]

Nabors argues that the 90% test in subsection .145(a)(5) "produces the arbitrary result of turning 87% of the world's nations into tax havens." Nabors states that "the critical flaw" is that the 90% test uses countries' nominal tax rates rather than effective tax rates. The superior court addressed this concern, noting that a

---

[106]     *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 452 (Alaska 1974).

[107]     *Id.*

[108]     *Id.*

[109]     *Id.*

[110]     *Id.*

"government's tax structure must be objective, not subjective" and that if the statute used an effective tax rate, "Alaska's use of the foreign country's tax rate as an identification tool for tax haven countries would be thwarted because the inquiry would become corporation specific, requiring tax officials to analyze each and every corporate structure to determine whether the affiliated group met the inclusion criteria." The court further noted that this case-by-case analysis would effectively turn high-tax jurisdictions into low-tax jurisdictions because the effective tax rate could be reduced by the specific tax circumstances of corporations, potentially resulting in a return that "includes more affiliated corporations than the statute intended." Nabors does not explain why the use of the nominal tax rate renders the statute arbitrary.

Nabors further asserts that the statute's over-inclusiveness renders it arbitrary because "turning 87% of the world's nations into tax havens is too sweeping for the [c]ourt to conclude that Alaska is rationally targeting that value." But Nabors does not dispute that the State's interest in preventing exportation of Alaska value is a legitimate interest and Nabors has not adequately shown that no reasonable basis for the 90% test exists.[111] The legislature sought to attract foreign investment by reducing corporations' reporting obligations for foreign affiliates while balancing the competing goal of preventing the exportation of Alaska value. The superior court noted that the 90% tax rate selected by the legislature "appears to have been based on the reporting threshold used by the IRS." We have recognized that a statute is not "constitutionally arbitrary" merely because it "can be characterized as numerically arbitrary."[112] The superior court thus did not err by concluding that subsection .145(a)(5) is not unconstitutionally arbitrary.

---

[111]  *See id.*

[112]  *Luper v. City of Wasilla*, 215 P.3d 342, 349 (Alaska 2009).

## VI.  CONCLUSION

The superior court's decision is REVERSED in part, AFFIRMED in part, and REMANDED for further proceedings consistent with this opinion.